# Exhibit M

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| MCP IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:22-CV-00004-jdp |
| RAVIN CROSSBOWS, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

---

## DEFENDANT'S INVALIDITY CONTENTIONS

Pursuant to the Court's Pretrial Conference Order, ECF No. 28, Defendant Ravin Crossbows, LLC ("Ravin") serves these invalidity or unenforceability contentions. Discovery is ongoing and these contentions are served without the benefit of full discovery in this case. Ravin reserves the right to supplement and/or amend these contentions should relevant information come to light through discovery. Moreover, as detailed in Ravin's letters dated July 15, 2022, and July 25, 2022, as of the date of service of these contentions, Ravin has yet to receive the majority of MCP IP, LLC's ("MCP") production of documents, including potentially relevant prior art and documents showing MCP's knowledge of other prior art devices. Thus, Ravin reserves the right to supplement and/or amend these contentions once Ravin has received MCP's production. Finally, the parties' claim construction positions have not yet been exchanged. The invalidity theories set forth herein are thus based on the plain and ordinary meaning of the claim limitations and/or on MCP's apparent construction of the claims, as evidenced from MCP's complaint, written discovery responses, and infringement contentions. Once the parties' claim constructions have been exchanged, Ravin will supplement and/or amend these contentions, as required. Additionally, expert discovery has not yet begun. Ravin's expert disclosures supporting one or more of the

1

invalidity contentions set forth herein will be disclosed in accordance with the Federal Rules and the case schedule governing this case.

### A. The Identity of Each Item of Prior Art that Anticipates or Renders Obvious Each Asserted Claim

Ravin identifies the following prior art now known to it to anticipate and/or render obvious the Asserted Claims, either expressly or inherently as understood by a PHOSITA, depending on the Court's interpretation of the claims.

#### 1. *Prior Art Products*

- Parker Concorde Crossbow
- Quadro 2000 Crisbow Crossbow
- Stryker Crossbow
- Desert Stryker Crossbow
- Strykeforce Crossbow
- TenPoint Vapor Crossbow
- Ravin Crossbows' Tacheads Bi-Pod
- Ravin R9 Crossbow
- Ravin Centerdrive Crossbow
- Barnett Quad Edge S
- Gearhead Archery X16 Crossbow
- Gearhead Archery X19 Crossbow
- LimbSaver SpeedZone
- LimbSaver DeadZone
- Horton Hunter XS Crossbow

2

2. *Prior Art Patents*

- U.S. Pub No. 2009/0223500 to Stanziale

- U.S. Pub No. 2010/0224177 to Kaylan

- U.S. Pub No. 2010/0281751 to Humpert

- U.S. Pub No. 2012/0006311 to Bednar

- U.S. Patent No. 4,388,914 to Cesin

- U.S. Patent No. 4,649,891 to Bozek

- U.S. Patent No. 4,667,649 to Humphrey

- U.S. Patent No. 4,947,822 to Jones

- U.S. Patent No. 5,119,797 to Anderson

- U.S. Patent No. 5,623,915 to Kudlacek

- U.S. Patent No. 6,990,970 to Darlington

- U.S. Patent No. 7,506,643 to Holmberg

- U.S. Patent No. 7,624,725 to Choma

- U.S. Patent No. 7,832,387 to Yehle

- U.S. Patent No. 7,891,348 to Colley

- U.S. Patent No. 8,622,050 to Goff et al.

- U.S. Patent No. 8,627,811 to Darlington

- U.S. Patent No. 9,194,643 to Biafore

- U.S. Patent No. 9,200,863 to Bednar

- U.S. Patent No. 9,303,945 to Hughes et al.

- U.S. Patent No. 9,933,225 to Yehle et al.

- U.S. Design Patent No. D775,302 to Barnett

3

- KR 860001808 to Kang

    3. *Prior Art Publications*

- May 2011 Parker Concorde Crossbow Report by Jace Bauserman (Inside Archery)

- Concorde with Quick Draw System Owner's Manual by Parker Crossbows

- Crisbow Crossbow Catalog by Crisbow Crossbow

- 2007 Stryker Owner's Manual by Stryker Crossbows/BowTech Archery

- 2010 String and Cable Charts by BowTech Archery

- 2013 TenPoint Product Catalog by TenPoint Crossbow Technologies

- 2014 TenPoint Owner's General Instruction Manual by TenPoint Crossbow Technologies

- Mar/Apr 1987 Mother Earth News Magazine, Issue No. 104

- 2007 Desert Stryker Owner's Manual by Stryker Crossbows/BowTech Archery

- StrykeForce Owner's Manual by Stryker Crossbows/BowTech Archery

- StrykeForce by BowTech Crossbow Report by Jon Teater (of Archery Evolution)

- 2008 Stryker Brochure by Stryker Crossbows/BowTech Archery

- 2014 TenPoint Vapor Crossbow Review by Best Crossbow Source

- Vapor Crossbow Owner's Manual by TenPoint Crossbow Technologies

- *Dimensioning of Accessory Mounting Rail for Small Arms Weapons*, MIL-STD-1913 (AR), United States Department of Defense February 3, 1995.

- Griggs, Jr., F., The Warren Truss, Structure Magazine (2015)

- Suresh, B.N., Sivan, K. (2015). Structures and Materials. In: Integrated Design for Space Transportation System. Springer, New Delhi.

- Belcher, Michael & Bergquist, Ann & Bidwell, Joseph & Earle, Kevin & Lennox, Scott & Pedraza, Daniel & Rogers, Christine & Vandyke, Matthew & Winski, Richard & Hall, Christopher. (2002). MicroMAPS Host Satellite Design Proposal.

- RFS-25 Anti-Material Rifle, Autodesk Webpage, May 6, 2015, available at: https://gallery.autodesk.com/fusion360/projects/93315/rfs-25-anti-material-rifle

### B. Whether Each Item of Prior Art Anticipates or Renders Obvious Each Asserted Claim

Each of the prior art references identified above anticipate and/or render obvious each asserted claim as set forth below. The specific grounds for invalidity advanced (e.g., anticipation, obviousness) are detailed in the charts themselves. Additionally, for the prior art that renders the Asserted Claims obvious, an explanation of why the prior art renders each asserted claim obvious is also included in the charts themselves, where applicable. As noted below, the charts are attached as Exhibits A1–J13. These preliminary invalidity contentions are based on MCP's apparent interpretation of the asserted claims and based on MCP's application of that claim interpretation to the Accused Products in its infringement contentions. Ravin's invalidity contentions are not an admission that Ravin agrees with MCP's apparent interpretation of the claim limitations.

### C. Charts Identifying Where in Each Item of Prior Art Each Claim Limitation is Found

As required by the Court's Pretrial Conference Order, attached as Exhibits A1– J13 are Ravin's charts setting forth where each prior art reference discloses each limitation of the asserted claims.

### D. Invalidity Based on 35 U.S.C. § 112

The claims set forth below are invalid for failing to comply with the enablement and/or written description requirements of 35 U.S.C. § 112, ¶ 1. To comply with the enablement

5

requirement of 35 U.S.C. § 112, ¶ 1, the specification must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation. To comply with the written description requirement, the patent specification must describe an invention in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention. *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013).

In addition, the claims set forth below are invalid for failing to comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 2. To comply with the definiteness requirement, the claim, when read in light of the specification, must apprise those skilled in the art of the scope of the claim. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340 (Fed. Cir. 2005). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instr., Inc.*, 134 S. Ct. 2120, 2124 (2014).

### 1. 35 U.S.C. § 112, ¶ 1

The claims set forth below are invalid for failing to comply with the enablement and/or written description requirements of 35 U.S.C. § 112, ¶ 1.

<u>"A compound archery bow…" ('220 Patent).</u> The asserted claims of the '220 Patent are directed to "[a] compound archery bow." However, MCP appears to contend that the preamble is not limiting and, as such, that the claims are broad enough to cover crossbows as well. Should the Court conclude the preambles are not limiting, the asserted claims of the '220 Patent are invalid for lacking enablement and written description support. First, the specification only ever describes the alleged invention as an "***archery bow***." Indeed, every section of the '220 Patent describes the invention as an archery bow:

6

- Title – ***Archery Bow***.

- Abstract – "In at least one embodiment, an ***archery bow***…"

- Figures – every figure of the alleged invention depicts an upright ***archery bow***.

- Brief Summary of Invention – "an ***archery bow*** comprises…"

- Brief Description of the Figures – all descriptions identify an "***archery bow***" or "***bow***."

- Detailed Description – The detailed description repeatedly describes the alleged invention as an ***archery bow*** or ***bow*** (e.g., 2:49–51; 3:10–15; 3:40–67; 4:1–4; 4:16–20; 4:21–52; 4:65–67), and never describes a crossbow embodiment or otherwise suggests the alleged invention could be embodied in a crossbow.

- Claims – every claim is directed to "a compound ***archery bow***."

Thus, the disclosure of the '220 Patent confirms there is no written description support for an alleged crossbow embodiment of the alleged invention described and claimed.

While the specification attempts to use non-limiting language that purports to broaden the scope of the invention (e.g., 5:57–6:22), such boilerplate language does not itself provide written description support for an alleged undescribed embodiment of the claimed invention. *See D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1050–51 (Fed. Cir. 2018). In *D Three*, D Three attempted to rely on language in the specification as evidence that it disclosed alternative attachment brackets for the claimed invention. "Specifically, D Three identifie[d] a statement that '[PHOSITAs] will recognize certain modifications, permutations, additions and sub-combinations thereof. It is therefore intended that the following appended claims hereinafter introduced are interpreted to include all such modifications, permutations, additions, and sub-combinations are within their true sprit [sic] and scope.'" *Id*. Rejecting the argument, the Court explained that such

"boilerplate language at the end of the 2009 Application's specification is not sufficient to show adequate disclosure of the actual combinations and attachments used[.]" *Id.*

"…the first rotatable member overlaps with the structural portion of the stock and a portion of the first rotatable member passes through a sidewall of the stock" ('893 Patent). This limitation is invalid as indefinite because it lacks written description support and is not enabled. Specifically, the claim clearly distinguishes between the "first rotatable member" and "a portion of the first rotatable member." Based on this distinction, it is clear that the entire first rotatable member, rather than just a portion of the rotatable member, must overlap with the structural portion of the stock. That requirement lacks both written description support and enabling disclosure. Specifically, the alleged invention described in the specification never describes a situation in which the entirety of the first rotatable member overlaps with the structural portion of the stock. Similarly, even if it did, such a disclosure would not be enabling, because the specification does not explain how such an arrangement would even be possible given the various restrictions arising from the structure of the alleged invention and the significant forces that would be placed on the crossbow by trying to draw the crossbow to such an extent that the entirety of the first rotatable member is overlapping a structural portion of the stock. Separately, there is also a lack of written description and enabling disclosure that would allow a PHOSITA to design and build a crossbow that includes a first rotatable member that both overlaps with and passes through the stock.

### 2.   35 U.S.C. § 112, ¶ 2

The claims set forth below are invalid for failing to comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 2.

"stock" (all Asserted Utility Patents except '220 Patent). The asserted claims of every Asserted Patent recite a "stock." One or more of the asserted claims are invalid as indefinite based on MCP's

contradictory interpretations of this limitation it has advanced for different Asserted Patents and Accused Products in its infringement contentions. Based on MCP's contentions, a PHOSITA would not be able to determine the proper scope of the claims. Below are all the mappings for "stock" from MCP's infringement contentions:

- '375 Patent (stock identified as reference 2):



- '775 Patent (stock identified as reference 2):



- '665 Patent (stock identified as reference 2):



- '433 Patent (stock identified as reference 2):



- '939 Patent (stock identified as reference 2):



- '893 Patent (stock identified as reference 2):



- '056 Patent (stock identified as reference 2):



- '435 Patent (stock identified as reference 2):



(R500/R500E)



(R26/R26X)



(R29/R29X)

Evident from above, it is not possible to ascertain the proper scope of the claimed "stock." For example, when identified in certain Accused Products, MCP has identified the stock being located toward the rear of the product, for others, MCP has identified it as being located just behind the trigger, and in others still, MCP has identified it being located above the trigger. Moreover, in every instance, it is impossible to determine from MCP's contentions what the structural boundaries of the stock are. Compounding the indefiniteness of the claimed stock, it is also not clear whether the stock is limited to a singular component, or whether MCP contends the stock may be comprised of several components affixed together.

While Ravin assumes these apparent inconsistences will be addressed during claim construction, based on MCP's existing, controlling contentions, the above patents are invalid as indefinite.

"said cable separated from said shooting axis by a shortest distance as measured perpendicular to the shooting axis . . . the shortest distance being greater in the first draw orientation than in the second draw orientation" ('939 Patent). This limitation is indefinite because it fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

14

First, "shortest distance" is a relative term. To be the "shortest," it must be compared to one or more other distances, and be found to be the shortest. Here, the claim fails to tell us what the "shortest distance" needs to be compared to. Thus, it is unclear if the claim is trying to say, for example, (1) that the cable has the smallest separation from the shooting axis at a point perpendicular to the shooting axis when compared to all the other points on the cable; (2) that the cable has the smallest separation from the shooting axis when compared to every other component's distance from the shooting axis; or (3) that the cable has a shortest separation from the shooting axis when "taken upon the first rotatable member" as claimed, when compared to when the cable is not taken upon the first rotatable member.

Second, the limitation states this shortest distance is "as measured perpendicular to the shooting axis." But every point on the cable can be measured "perpendicular to the shooting axis." Thus, the claim does not provide enough clarity to determine what point should be selected to perform the measurement of the "shortest distance."

Third, as explained above, "shortest" distance is relative, so the identified shortest distance must be the smallest when compared to some reference point. However, the claim then further states "the shortest distance being greater in the first draw orientation than in the second draw orientation." This limitation is also indefinite for several reasons. First, by definition, the "shortest" distance cannot be "greater" than another distance, because the claim specifically defines it as the shortest. Second, the limitation relies on the antecedent basis for "shortest distance" from the prior limitation. This creates a contradiction in the claim—the shortest distance has already been measured, by using antecedent basis, the claim calls back to that already measured distance, so it cannot be greater in another orientation. Relatedly, all the indefiniteness surrounding how to identify which portion on the cable to measure to, and where to measure from, are also present

here. If a "shortest" distance must be remeasured in the second draw orientation, is that measurement taken from the same reference point used for the first measurement? Is the measurement made to the same spot on the cable? The claim does not provide the requisite clarity to answer these questions. For at least these reasons, this limitation is indefinite. *See Personalized Media Commc'ns, LLC v. Google LLC*, No. 19-CV-00090-JRG (E.D. Tex. Apr. 3, 2020) (finding claim invalid as indefinite where the claim recited "said identified storage locations," but the claim failed to specify where those "identified storage locations" were supposed to be found, and there were several possible locations identified in the claim).

"said cable guard biasing said power cable in a lateral direction" ('220 Patent). Claim 1 of the '220 Patent recites that "said cable guard biasing said power cable in a lateral direction." This limitation is indefinite because it not clear what direction is "a lateral direction." In other words, a "lateral" direction is relative, i.e., a direction away from a midline, so there must be a ***specific*** reference midline as a start. Here, no specific reference is specified. In other words, the claim does not answer the question: "lateral to what?" There are multiple potential options for the specific reference midline. For example, it could be an axis that bisects the bow lengthwise. But it could also be an axis that bisects the bow widthwise. Alternatively, it could be the shooting axis. Similarly, it could be an axis between the rotatable members. Because the claim does not provide this critical reference midline, the claim is invalid as indefinite. *See Personalized Media* (finding claim invalid as indefinite where the claim recited "said identified storage locations," but the claim failed to specify where those "identified storage locations" were supposed to be found, and there were several possible locations identified in the claim). Moreover, the specification does not provide any clarity as to the meaning or scope of the limitation.

16

"said guide member comprises a channel, said second cable positioned in said channel" ('665 Patent). Claim 10, depending from Claim 6, which itself depends from Claim 1, of the '665 Patent recites "where said guide member comprises a channel, said second cable positioned in said channel." This limitation is indefinite for at least two reasons. First, the claim uses antecedent basis for "said guide member," but no guide member is recited in either Claim 6 or Claim 1. Thus, it is not clear where the guide member must be positioned. For example, is the guide member supposed to be located on the first cable positioner, the second cable positioner, or somewhere else entirely? The claim does not say. Second, and further compounding the indefiniteness of the claim, the limitation goes on to recite "said second cable" is positioned in said channel. But neither Claim 6 nor Claim 1 recite a "second cable" either. Instead Claims 1 and 6 recite a "second cable segment." Thus, as written, the entirety of the "second cable" must be positioned in the unspecified "guide member."

"the riser defining a predetermined location" ('220 Patent). This limitation is invalid as indefinite because the claim does not inform a PHOSITA as to how the "predetermined location" is defined. Instead, the claim simply says the riser defines that location. Thus, the precise limitations on the scope of this claim are unknown—it is not claimed how the predetermined location is determined or whether the predetermined location ultimately "defined" must be on the riser, or just defined by it. Thus, this limitation is indefinite.

"…the first rotatable member overlaps with the structural portion of the stock and a portion of the first rotatable member passes through a sidewall of the stock" ('893 Patent). This limitation is indefinite based at least on MCP's apparent interpretation of it. Specifically, MCP has mapped a single structural component / interaction between the alleged stock and first rotatable member as satisfying this entire limitation:

| | | |
|---|---|---|
| the first rotatable member overlaps with the structural portion of the stock and a portion of the first rotatable member passes through a sidewall of the stock. | in green] with the structural portion of the stock when a rotatable member passes through the sidewall of the stock [11] |  |

Based on MCP's interpretation of this limitation, a PHOSITA would not be able to ascertain the proper scope of this limitation, namely, the distinction between the alleged "structural portion of the stock" and the "sidewall of the stock." And because MCP has not clearly distinguished between these structural components, there is also no apparent distinction between overlapping the structural portion of the stock and passing through the sidewall of the stock.

<u>"the crossbow comprising a drawn orientation wherein the first rotatable member overlaps with the stock such that a reference line oriented parallel to the rotation axis intersects the first rotatable member and the structural portion" ('056 Patent).</u> As explained above with the '893, the similarly drafted overlapping/intersecting limitation is indefinite. Based on the indefiniteness issues created in the '893 Patent, a PHOSITA also would be unable to ascertain the proper scope of this limitation in the '056 Patent. For example, MCP's allegations make it impossible to determine the distinction between the "stock" and the "structural portion."

### E. U.S. Design Patent No. 868,195 is Invalid Because the Claimed Design is Dictated by Function

35 U.S.C. § 171 "authorizes patents claiming 'new, original, and *ornamental* design[s] for an article of manufacture.'" *Auto. Body Parts Ass'n v. Ford Global Techs., LLC*, 930 F.3d 1314, 1318 (Fed. Cir. 2019). Accordingly, "a design patent must claim an 'ornamental' design, not one 'dictated by function.'" *Id.* (quoting *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013)). In other words, "a design patent may not claim a 'primarily functional' design." *Id.*

The claimed design of the '195 Patent is invalid because it is dictated by function. The claimed design is nothing more than a triangular open isogrid:



Triangular isogrids were developed by NASA in the early 1970's, and are a well-known way to strengthen and stiffen a structure while reducing weight:

> Typically, increasing thickness increases buckling strength of a structure. However, this directly conflicts with minimizing mass. A more effective way to strengthen and stiffen a bus structure is to use ***isogrid construction***. Isogrid consists of machining a plate into a triangular pattern, as shown in Figure 5. This option is lighter than pure aluminum for smaller bus structures, with identical strength properties in all load directions.

19



Figure 5: Illustration of isogrid construction[15]

*See* Belcher, Michael & Bergquist, Ann & Bidwell, Joseph & Earle, Kevin & Lennox, Scott & Pedraza, Daniel & Rogers, Christine & Vandyke, Matthew & Winski, Richard & Hall, Christopher. (2002). MicroMAPS Host Satellite Design Proposal, at 19–20.

Similarly, one textbook explains:

An isogrid structure is having integral grid stiffness and grids form equilateral triangle pattern. The isogrid structure acts like an isotropic material with uniform properties in all directions. Such structures demonstrate very good strength-to-weight and stiffness-to-weight characteristics. Isogrids are used for structures which are subjected to internal or external pressures along with longitudinal loads. . . . Typical isogrid panels are shown in Fig. 11.10.



20

*See* Suresh, B.N., Sivan, K. (2015). Structures and Materials. In: Integrated Design for Space Transportation System. Springer, New Delhi. https://doi.org/10.1007/978-81-322-2532-4_11.

Further, the use of rounded-corner triangles instead of sharp corner triangles is a choice dictated by function as well. It was well-known that the use of cutout shapes with sharp internal corners cause stress concentrations at those corners. By rounding the internal sharp corners, the stress concentration at those locations is decreased. Thus, to the extent the above references, and the common-place knowledge of open isogrids going back decades, do not anticipate or render obvious the claimed design of the '195 Patent, the claimed design is invalid as being dictated by function.

### F.  The Asserted Patents are Unenforceable Due to Inequitable Conduct

MCP has, to date, refused to provide discovery responses to Ravin on what art it knew about, and when it knew about it. Ravin has been left to speculate on information and belief gathered from the limited documents produced by MCP as to what prior art it was aware of during particular timeframes. From the information available to Ravin, it appears MCP, its agents, employees, or prosecuting attorneys, knew of material prior art and failed to disclose it as described below. Once MCP provides its requested discovery, Ravin will proceed with amending its answer as required by the rules. Further, Ravin incorporates by reference in its entirety its response to MCP's Interrogatory No. 3.

One or more of the Asserted Patents are also unenforceable due to inequitable conduct during prosecution in the USPTO. Pursuant to 35 U.S.C. § 102(b) (pre-AIA), an applicant may not receive a patent for an "invention [that] was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." Disclosures that are made more than one year

before the date of application of a claimed invention are prior art. The earliest potential effective filing date of U.S. Patent No. 10,690,435 (the "'435 Patent") is May 25, 2011. Thus, the earliest critical date for analyzing whether the invention disclosed in the Asserted Patents was disclosed over one year before the filing date of the claimed inventions is May 25, 2010. At least the Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows were in public use, on sale, or otherwise available to the Public in the United States prior to May 25, 2010.  The Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows are prior art to the '435 Patent. Ravin contends that the Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows are prior art to the '435 Patent, and that the crossbows practiced the invention claimed in the '435 Patent.

Pursuant to 35 U.S.C. § 102(e) (pre-AIA), an applicant may not receive a patent if "the invention was described in . . . an application for patent . . . by another filed in the United States before the invention by the applicant for patent." Patent applications with an effective filing date before the claimed invention are prior art to the claimed invention. U.S. Patent No. 8,240,299 to Kronengold et al., filed January 7, 2009 (the "'299 Patent"), and U.S. Patent No. 8,453,631 to Kronengold et al., filed January 7, 2009 (the "'631 Patent"), are prior art to the '435 Patent. The '299 Patent was first published as U.S. Patent Application 2010/0170487 A1 on July 8, 2010. The '631 Patent was first published on June 4, 2013.

On May 25, 2011, U.S. Provisional Application 61/489,727 entitled "Bullpup Crossbow" ("'435 Provisional") was filed with the U.S. Patent and Trademark Office ("USPTO"). The '435 Provisional listed Paul Trpkovski as "Inventor." Upon information and belief, after the '435 Provisional filing, but before the application that resulted in the '435 Patent, named inventor Trpkovski assigned his right and interest in the '435 Provisional to Mathew McPherson, who subsequently assigned his right and interest in the '435 Provisional to MCP IP, LLC. Upon

information and belief Mathew McPherson, through MCP IP, LLC, and/or other employees, agents, or attorneys of MCP, directed and controlled the prosecution of all child applications to the '435 Provisional, including U.S. Patent Application No. 15/990,533, which matured into the '435 Patent. Upon further information and belief, Jeremy G. Laabs has acted as MCP's representative for prosecuting the '435 Patent family since at least 2012 and has continued to represent MCP throughout prosecution of all child applications to the '435 Provisional, including Application No. 15/990,533, which matured into the '435 Patent. This knowledge of the Stryker crossbows by McPherson, Laabs, and other employees of MCP existed during the pendency of the prosecution of the '435 Patent when a duty to disclose material information to the PTO existed.

Upon information and belief, Mathew McPherson, Jeremy Laabs, and/or other employees of MCP were aware of the Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows prior to and during prosecution of the '435 Patent. Upon information and belief, Mr. McPherson and/or other individuals at MCP were subscribed to and/or aware of Inside Archery magazine, as well as other industry publications, since at least 2007 when the original Stryker crossbow was released. In its production, MCP produced an Inside Archery article from 2007 detailing and reporting on the Stryker crossbow. Upon information and belief, Mr. McPherson and/or other individuals at MCP were aware of the Inside Archery Stryker article at or about the time of the article's publication. Generally, on information and belief Mr. McPherson and/or other individuals at MCP were aware of the Stryker crossbows through attending tradeshows and general knowledge of competitors in the industry. Mr. McPherson and/or other employees of MCP were also aware of the Horton Hunter XS at least as of May 11, 2019, when MCP filed two Inter Partes Reviews ("IPR") against Craig Yehle on U.S. Patent Nos. 7,305,979 (IPR2019-00990) and 7,770,568 (IPR2019-01013). They likely were also aware of the Hunter Horton XS through general industry

knowledge and attendance of trade shows. In exhibit 1016 of both IPRs, MCP included a Bow Hunting World "Bow Report" on the Mathews LX compound bow. Exhibit 1016 also contains an advertisement for the Horton Hunter XS crossbow. At the time MCP filed both IPRs, prosecution for the '435 Patent was still ongoing. As assignee of the '435 Provisional, Mr. McPherson and/or other employees, agents, or attorneys of MCP had a duty to disclose this knowledge of the Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows to the USPTO, at least whilst prosecution was ongoing. As prosecuting attorney, Mr. Laabs also had a duty to disclose. And, on information and belief, other employees with knowledge of this prior art also had duties to disclose. The Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows are all material prior art, since they practice all limitations of all claims of the '435 Patent, and therefore would have prevented the USPTO from issuing the '435 Patent. Upon further information and belief, these individuals made a deliberate decision to withhold the information regarding the Stryker, Desert Stryker, Strykeforce, and Horton Hunter XS crossbows from the USPTO. Discovery is ongoing and Ravin will supplement its contentions as further information comes to light.

Upon further information and belief, Mr. McPherson and others at MCP, including Mr. Laabs, had knowledge of the '299 and '631 Patents. The '299 and '631 Patents each contain an express discussion of the Stryker family of crossbows which would have put these individuals on notice of the Stryker family of crossbows. Both the '631 and '299 Patents were published and granted before Application No. 15/990,533, which matured into the '435 Patent, was filed on May 25, 2018. The '631 Patent is listed on the Information Disclosure Statement for at least 14 Patent Applications on which Mathew McPherson is listed as a named inventor, and the '299 Patent is listed on at least 10 Patent Applications on which Mathew McPherson is listed as a named inventor and which Mr. Laabs was attorney of record. Neither the '631 nor '299 Patents appear on any

disclosure in the '435 Patent family, despite appearing on numerous IDS filings from McPherson and/or MCP during the same time period in other matters. Upon information and belief, this exclusion was deliberate in an effort to mislead the USPTO, since disclosure of the material Stryker crossbow family would have led to denial of all patents in the '435 Patent family. Upon further information and belief, Mr. McPherson, Mr. Laabs, and/or other individuals at MCP knew of the materiality of the Stryker family of crossbows. Discovery is ongoing and Ravin will supplement its contentions as further information comes to light.

Dated: August 4, 2022August 4, 2022                                  Respectfully submitted,

By: /s/_____

Adam P. Seitz (pro hac vice)
KS Bar No. 21059
Email: adam.seitz@eriseip.com
Michelle L. Marriott (pro hac vice to be filed)
KS Bar No. 21784
Email: michelle.marriott@eriseip.com
Alex M. Matthews (pro hac vice)
KS Bar No. 29028
Email: alex.matthews@eriseip.com
Hunter A. Horton (pro hac vice to be filed)
KS Bar No. 27673
Email: hunter.horton@eriseip.com
Clifford T. Brazen (pro hac vice)
KS Bar No. 27408
Email: cliff.brazen@eriseip.com
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601

J. Derek Vandenburgh
WI Bar No. 0224145
Email: dvandeburgh@carlsoncaspers.com

25

**Carlson, Caspers, Vendenburgh &
Lindquist, PA**
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9618

***Attorneys for Defendant RAVIN
CROSSWBOWS, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via electronic mail on August 4, 2022.

*/s/* _____
Adam P. Seitz