# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| MCP IP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:22-CV-00004-jdp |
| RAVIN CROSSBOWS, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

---

## DEFENDANT RAVIN CROSSBOWS, LLC'S
## REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

*I. INTRODUCTION* ................................................................................................. *1*

*II. ARGUMENT* ..................................................................................................... *1*

    **A. The '435 Patent** .......................................................................................... 1

    **B. The '375 Patent Family** ............................................................................. 9

    **C. The '220 Patent** ........................................................................................ 17

    **D. The '433 Patent Family** ........................................................................... 27

    **E. The '893 Patent Family** ............................................................................ 30

    **F. The 'D195 Patent** ..................................................................................... 32

        *1.*    *MCP Failed To Rebut The Intrinsic Evidence Confirming The D'195 Patent Is Limited To A Crossbow's Flight Groove Or Arrow Track, Warranting Summary Judgment Of Non-Infringement* .................................................................................. *32*

        *2.*    *MCP's Observably False Claim That Ravin's Picatinny Rail And Finger Guard Both Contain Triangles Of Uniform Size And Shape Is Insufficient To Defeat Ravin's Motion For Summary Judgment* ..............................................................................*36*

    *III. CONCLUSION* ............................................................................................ *39*

# **TABLE OF AUTHORITIES**

**Cases**

*Acuity Brands Lighting, Inc. v. Ultravision Techs., LLC*, 2021 WL 3187439 (D. Del. 2021) ..... 18
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ........................................................ 24
*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) ............. 17
*Campbell Soup Company v. Gamon Plus, Inc.*, 10 F.4th 1268, 1271 (Fed. Cir. 2021)................ 36
*Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)..... 19
*Cheetah Omni LLC v. Alcatel-Lucent Inc.*, 939 F.Supp.2d 649, 657–58 (E.D. Tex. 2013) .......... 4
*Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ............................. 34
*CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1298 (Fed. Cir. 2021) ............... 24
*Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002) 28
*Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003)............................... 28
*D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018). ..................... 28
*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357 (Fed. Cir. 2012) ...................................... 20
*Dominion Energy, Inc. v. Alstom Grid LLC*, 725 F. App'x 980, 986 (Fed. Cir. 2018) ............... 11
*Durdin. Durdin v. Kuryakyn Holdings, Inc.*, 449 F.Supp.2d 921 (W.D. Wisc. 2006) ................ 38
*Egyptian Goddess*, 543 F.3d 665, 682–83 (Fed. Cir. 2008) .......................................................... 41
*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) ................................ 35
*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1563 (Fed. Cir. 1995)................... 31
*Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966)
*GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370–71 (Fed. Cir. 2016)........................................ 22
*In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014)................................................................. 18
*In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1287 (Fed. Cir. 2016)......................... 18
*Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347–48 (Fed. Cir. 2009) ......................... 21
*Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, No. 14-cv-3103, 2016 WL 706190 (D.
     Minn. Feb. 22, 2016)............................................................................................................... 8
*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 5781 U.S. 191, 196 (2014) ...................... 17
*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349–50 (Fed. Cir. 2004)................. 13
*Nat'l Prods., Inc. v. ProClip USA, Inc.*, No. 20-cv-439-wmc, 2022 WL 2304114, at *6 (W.D.
     Wisc. June 27, 2022)............................................................................................................. 24
*Nautilus, Inc. v. Biosig Instr., Inc.*, 134 S. Ct. 2120, 2124 (2014) ............................................. 32
*NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) ........................... 13
*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ................................ 9
*On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343–44 (Fed. Cir. 2006) ...... 19
*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed. Cir. 2005) (en banc) .............................. 6
*Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056 (Fed. Cir. 2018) .................................... 10
*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011)...... 19
*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003).......... 6
*St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270 (Fed. Cir. 2011)
     ................................................................................................................................................ 13
*Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x 983, 987 (Fed. Cir. 2015)15
*Tecumseh Prods. Co. v. Briggs & Stratton Corp.*, 295 F.Supp.2d 902, 916 n.2 (E.D. Wisc. 2003)
     ................................................................................................................................................ 39
*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1369 (Fed.
     Cir. 2016) ............................................................................................................................... 13

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) ..................................................................................................................... 6

*ViaTech Techs. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 553 n. 5 (Fed. Cir. 2018) ............... 15

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324(Fed. Cir. 2009) ............................ 31

# I.  INTRODUCTION

Rather than focus on the facts and law relevant to Ravin's motion, MCP instead used its Opposition Brief to lob *ad hominem* attacks at Ravin in an effort to deflect from the straightforward conclusion the facts and law demand. Indeed, MCP's own Opposition is replete with the exact evidence and admissions upon which Ravin's motion was based—evidence that supports Ravin's motion for summary judgment. But rather than rebut Ravin's arguments for why the evidence and admissions warrant the adoption of Ravin's claim constructions and the grant of Ravin's motion for summary judgment, MCP hopes its derisive posturing and hand waving will save it. As explained below, stripped of all its bluster, MCP's Opposition fails to provide any basis in fact or law to deny Ravin's motion. Ravin therefore respectfully reiterates its request that the Court grant its motion for claim construction and summary judgment.

# II.  ARGUMENT

At this stage in the briefing, the parties' respective claim construction arguments have been extensively detailed in each of their respective Opening and Opposition Briefs. Rather than rehash those arguments again here, Ravin instead has focused its reply on responding to those of MCP's opposition arguments that are relevant to Ravin's summary judgment motion.

## A. The '435 Patent

### 1.   *Ravin is entitled to summary judgment of non-infringement or invalidity of the '435 Patent based on the "extension member" limitation*

MCP continues to speak out of both sides of its mouth in its attempt to avoid the Court invalidating the '435 Patent. First, MCP tries to avoid summary judgment of non-infringement by arguing Ravin has "falsely claim[ed]" that MCP has interpreted Claim 1 of the '435 Patent as requiring the latch to be positioned directly below the cheek rest. *MCP Opp.*, at 28. Instead, MCP purports to agree with Ravin that Claim 1 only requires "an extension member comprising a cheek

1

rest and a picatinny rail," wherein "the extension member is positioned above a stock" and "the extension member and the stock define a cavity" and a "latch positioned in the cavity." *Id*. at 27–28. MCP's arguments about the positions it has taken are demonstrably wrong as evidenced by its own briefing in the summary judgment motion, its opposition to Ravin's Motion to Amend, and its expert report. Indeed, as soon as MCP turns to anticipation, it immediately changes its interpretation for Claim 1 back to the exact position it says it never advanced: "[i]mportantly . . . the ***cheek rest*** of the Stryker crossbow is located ***behind (and not above) the cavity*** in which the latch is located and thus does not define the cavity with the stock." *MCP Opp.*, at 37 (emphasis in original). On the very next page, MCP again claims the Stryker does not anticipate because "[t]he Stryker crossbow's cavity is ***not defined*** by the picatinny rail ***and the cheek rest*** and the stock as ***required*** by claim 1." *Id*. at 38 (emphasis in original).[1] But regardless of the interpretation of Claim 1 the Court adopts, Ravin is entitled to summary judgment.

If the Court determines MCP has narrowed the scope of Claim 1 to require the latch be disposed directly beneath the cheek rest, MCP's evidence in opposition is insufficient to defeat Ravin's motion for summary judgment. At the outset, MCP's only argument is that the Accused Products infringe because a ***portion*** of what it has identified as the latch is directly under the cheek rest. *MCP Opp.*, at 29–31. But MCP has repeatedly argued that ***the*** novel and patentable feature of the invention claimed in the '435 Patent is that the ***entire*** latch be disposed beneath the cheek rest. *See* Dkt. 54, at 5–6. According to MCP, this requirement was confirmed by the Figures:

---

[1] MCP also advanced this interpretation of Claim 1 in its own summary judgment motion. Dkt. 82, at 44 ("But what is not shown by the picture is that there is no bowstring latch beneath the ***removed cheek rest***.").



*Id.* at 7 (depicting latch 20 entirely below cheek rest 50); Dkt. 83, at ¶¶ 173–95, 212–35; Dkt. 82, at 36–41.

The claims further confirm that the location of the latch is dictated by the entire latch, and not just a portion of the latch. Here, claim limitation 1(g) of the '435 Patent expressly discusses "**the latch** positioned in the cavity" and not "*a portion of* the latch positioned in the cavity." Dkt. 6-6 ('435 Patent), at 9:27. Thus, whatever position MCP is contending the latch must be in, it must be the entirety of the latch and not simply "a portion of" the latch. This is made clear by the claim language from claim 2. There, the patentee sought to specify that only a portion of a claimed structure be required, and the patentee expressly claimed as much. For example, in Claim 2, the patentee further required "at least ***a portion*** of said cheek rest orientated over said latch." *Id.* at 9:28–29. Thus, the patentee's decision to distinguish between "a portion" of a claimed component and the entire component "makes it impossible to interpret [the claimed latch] to require" just "a portion of" the latch. *See Personal Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 990–91 (Fed. Cir. 2017) (explaining that the recitation of "the data . . . comprises at least some of the contents

of the particular data item" in the independent claims made it impossible to interpret the claims to require "all" of the data, which was further confirmed by a dependent claim that expressly added that limitation); *see also Cheetah Omni LLC v. Alcatel-Lucent Inc.*, 939 F.Supp.2d 649, 657–58 (E.D. Tex. 2013) ("Claim 8 specifically distinguishes between 'the first part' and 'a portion of the first part' in consecutive limitations, indicating 'the first part' alone must mean more than just a portion of the first part.").

MCP's own evidence plainly confirms the identified latch in each of the Accused Products is not entirely beneath the cheek rest. In the pictures below, MCP has identified the latch in each Accused Product with green highlighting. Ravin has added the red line to show the end of the cheek rest and how the latch in each Accused Product extends beyond the cheek rest.

 



*MCP Opp.*, at 30 (annotated). No reasonable juror could conclude that the entire latch is located under the cheek rest. Indeed, the <u>*only*</u> conclusion that could be reached by the jury is that a portion of the latch is indisputably located outside of the cavity of the cheek rest. Thus, summary judgment under MCP's construction is warranted.

On the other hand, if MCP is not held to its narrowing of Claim 1 but is instead interpreted as written—the interpretation MCP relies on for its infringement arguments—then Ravin is entitled to summary judgment of invalidity. As MCP initially acknowledged, Claim 1 only requires "an extension member comprising a cheek rest and a picatinny rail," wherein "the extension member is positioned above a stock" and "***the extension member*** and the stock define a cavity" and a "latch positioned in the cavity." *MCP Opp.* at 27–28. Claim 1 ***does not*** require that both components of the extension member define the cavity, only that the extension member as a whole defines the cavity. *Id*. MCP's contention that the cheek rest itself must also extend over the cavity containing the latch—the sole limitation added by dependent Claim 2—is contrary to black letter

law. *See Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016 ("[I]n a situation where dependent claims have no meaningful difference other than an added limitation, the independent claim is not restricted by the added limitation in the dependent claim.") (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314–15 (Fed. Cir. 2005) (*en banc*); *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003) ("To construe the 'filter bed' of claim 1 as including a flocculation, a transitional, and a filter layer . . . is not supported by the doctrine of claim differentiation, especially as the only meaningful difference between claims 7 and 12 is the limitation regarding a transitional layer, and a major difference between claim 1 and claim 7 is the latter's addition of a flocculation layer.").

There is no genuine dispute that the Stryker's extension member defines such a cavity and that its latch is located in that cavity. MCP's own evidence, again, confirms this point. While MCP correctly identified the Stryker's cheek rest, MCP conveniently failed to identify the picatinny rail and, critically, the extension member. Ravin has further annotated the picatinny rail (blue) and extension member (red) below:



*MCP Opp.*, at 37 (annotated). As MCP's own evidence plainly confirms, the Stryker's extension

member extends over the cavity and well forward of the latch. Accordingly, if MCP is not held to

its narrowing of Claim 1, Ravin is entitled to summary judgment of invalidity of Claims 1, 6-8,

10-13, and 15 of the '435 Patent.

> 2.    *Ravin is entitled to summary judgment of non-infringement of the '435 Patent as to the R26/R26X and R29/R29X because they do not include one of either of the claimed cheek rest or butt*

As for the R26/R26X and R29/R29X, Ravin's motion for summary judgment turns on a

relatively straightforward matter of claim construction. As Ravin explained in its Opening Brief,

the '435 Patent describes multiple embodiments with varying configurations of the butt, cheek

rest, extension member, and latch. Relevant here, the '435 Patent describes one embodiment where

"the extension member **48** comprises ***an extension of the butt 17*** or the stock **16**." Dkt. 6-6, at

4:7–8. Notably, that embodiment does not include a cheek rest. *Id*. at 4:4–19. Immediately after

describing that embodiment, the '435 Patent describes the embodiment including the cheek rest,

corresponding with the claims. *Id.* at 4:20–44. Also notably, the '435 Patent describes certain embodiments where the cheek rest "is a unitary portion of the extension member **48**." *Id.* at 4:24–25. But nowhere does the '435 Patent teach an embodiment where the cheek rest is a "unitary portion" of the butt. And Claim 1 confirms the butt of its crossbow is a separate component by reciting it separately from the "cheek rest," "picatinny rail," and "extension member." *Compare* Dkt. 6-6, at 9:19–20, *with id.* at 9:21–27.

MCP's reliance on *Luminara Worldwide, LLC v. Liown Electrics Co.* is misplaced. *MCP Opp.*, at 33 (citing *Luminara*, No. 14-cv-3103, 2016 WL 706190, *13–14 (D. Minn. Feb. 22, 2016)). Indeed, in a footnote to the quote relied upon by MCP, the *Luminara* court observed that "unlike the specification in <u>Becton</u>, the specification of the '166 Patent (in Figure 11) discloses a 'body' and 'flame silhouette' as an integrated structure." *Luminara*, 2016 WL 706190, at *14 n.6. Not only does the '435 Patent lack such supporting disclosure, it explicitly describes embodiments where ***some*** of the components may be integrally formed, but the butt and cheek rest are not among those described as potentially being integrally formed. Dkt. 6-6, at 4:4–49. For example, consistent with the claim language, the '435 Patent explicitly states the cheek rest may be "a unitary portion of the extension member **48**." *Id.* at 4:24–25. Tellingly, the '435 Patent has no similar disclosure suggesting the cheek rest may be a unitary portion of the butt.

That the '435 Patent fails to disclose an integrally formed cheek rest / butt stock is not surprising. Contrary to MCP's claim, there is a "clear indication" in the intrinsic record that MCP intended its invention to exclude such an integrally formed component. *MCP Opp.*, at 34. Specifically, during examination, MCP amended the claims to add the limitations "a handgrip in proximity to the trigger" and "a butt located rearward of the latch, the butt spaced apart from the handgrip. *See* Dkt. 84-10, at MCP_001455. Notably, in traversing the Examiner's rejection, MCP

distinguished the prior art because it did "not mention any kind of cheekrest associated with the accessory mounting rail[,]" but instead taught "that the AR lower receiver 22 is arranged to receive a standard AR buttstock," where "***the buttstock includes a cheekrest***." *Id*. at MCP_001458 (emphasis added). In other words, MCP told the Patent Office its invention was different from the prior art, and thus patentable, because its cheek rest was different from the buttstock. Thus, contrary to the claimed invention that required the cheek rest to be part of the extension member, the prior art disclosed a cheek rest that was, instead, part of the buttstock. *Id*. Having distinguished its claimed invention from prior art crossbows that placed the cheek rest on the butt stock, MCP cannot now argue it is entitled to that very configuration. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) ("The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution"); *Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966) ("claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent"). Accordingly, *Luminara* is inapposite, and *Becton*, distinguished by the court in *Luminara*, controls.

### B. The '375 Patent Family

       *1.*    *Ravin is Entitled to Summary Judgment of Non-Infringement of the Asserted Claims of the '375 and '757 Patents Because the R500 Does not Read on the "Extending Between" Limitations When Properly Construed*

There is nothing improper about a claim construction that adds additional language to the limitation as part of the construction. In fact, the Federal Circuit has affirmed a claim construction for the exact limitations at issue here that directly supports Ravin's proposed construction. In *Polaris Industries, Inc. v. Arctic Cat, Inc.*, the Federal Circuit affirmed a construction of "extending between" from the limitation "a front drive shaft extending between the transmission

9

and the front axle assembly" that added words to the limitation—specifically, a construction of "a front drive shaft, and only that drive shaft, 'account for the entire distance between the transmission and the [front] axle assembly.'" 882 F.3d 1056, 1073 (Fed. Cir. 2018).

Moreover, the '375 Patent supports Ravin's position, not MCP's. Indeed, MCP's claims about the Figures are belied by its very own evidence. MCP's argument hinges entirely on its claim that the power cables are not connected to the rotatable members on one end, but to an "anchor" that "does not and cannot rotate with the rotatable member 14[.]" *MCP Opp.*, at 10. But MCP's own annotated Figures disprove its claim. As an initial matter, MCP's annotations are misleading. The gold color provided by MCP to the alleged anchor suggests that portion of the cam does not rotate or otherwise move. It does. MCP's evidence shows that the alleged anchor, annotated in gold, has a cutout in it. Ravin has added purple arrows to MCP's evidence below to show how the cutout rotates from its initial location in the undrawn position to a new location in the drawn position, as well as a green point of reference on what MCP has identified as the gold component to show how it rotates with the cutout:



'375 patent; details of Fig. 4 (undrawn position), left and Fig. 5 (drawn position), right.

*MCP Opp.*, at 9 (annotated). The cutout would not get larger and move to a different location if the anchor did not rotate with the rest of the cam. Thus, MCP's own evidence ***conclusively*** debunks MCP's claim that the anchor does not rotate and only serves to further undermine the opinions of Dr. Paulus. *See Dominion Energy, Inc. v. Alstom Grid LLC*, 725 F. App'x 980, 986 (Fed. Cir. 2018) ("Just saying something is so does not make it true, especially when there is no record support and, in fact the [evidence] indicates otherwise."). Accordingly, Ravin's understanding of the '375 Patent remains correct—every embodiment in the '375 Patent is depicted with a bowstring and power cables extending between and contacting or connecting to the rotatable members. Ravin Br., at 13–16.

MCP's reliance on the '375 Patent's incorporation by reference of certain patent applications again supports Ravin's position, not MCP's. *MCP Opp.*, at 11. First, the incorporated applications are all owned by MCP, demonstrating that MCP had utilized limb-to-cam cabling arrangements for other prior inventions, but deliberately rejected those designs in favor of the cam-to-cam cabling arrangement disclosed in the '375 Patent (and in MCP's force vectoring patent and even one of the patent applications incorporated by issue). *See* Dkt. 99-6 (U.S. Application No. 61/699,271); Dkt. 99-7 (U.S. Application No. 61/699,244); Dkt. 99-8 (U.S. Application No. 61/699,197); Dkt. 99-9 (U.S. Application No. 61/699,248); Dkt. 99-10 (U.S. Application No. 12/699,244). (Nardick Dec.) ¶¶ 8–12.  Second, none of the incorporated applications are even directed to inventive cabling arrangements. One of the applications is directed to cable positioners, and three of the applications do not even mention power cables at all. *Id*. Thus, not only do these applications not support MCP's claim construction, they directly refute it.

Finally, MCP's reliance on the '220 Patent's disclosure is misplaced and, instead, is further evidence of why the '375 Patent should be construed as Ravin has proposed. *MCP Opp.*, at 11–

12. While the '375 Patent exclusively describes and depicts the power cable extending between and contacting the rotatable members, the '220 Patent is not so limited. Indeed, the '220 Patent explicitly states that "power cable **52** extends from a power cam **42** on one rotatable member (e.g. **22**) *to an anchor (e.g. 20) on or near the opposite rotatable member (e.g. 20)* that does not include a power cam. Dkt. 6-9, at 4:5–8 (emphasis added). Thus, the inventor made an express decision in the '220 Patent to expressly disclose an embodiment *that is not disclosed anywhere in the '375 Patent Family*.

> 2.   *Ravin Is Entitled To Summary Judgment Of Non-Infringement Of The Asserted Claims Of The '665 Patent Because The R500 Does Not Read On The "First Cable Segment" And "Second Cable Segment" Limitations When Properly Construed*

MCP's chief complaint with requiring the first cable segment and second cable segment be attached to the rotatable members—as exclusively depicted in the specification—is that the claims of the '665 Patent do not include the extending between limitations found in the claims of the '375 and '757 Patents. *MCP Opp.*, at 14. But the Federal Circuit has repeatedly "held that where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'" *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1369 (Fed. Cir. 2016) (citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) and *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349–50 (Fed. Cir. 2004). That is exactly the case here—all three patents in the '375 Patent Family share the same specification. Dkt. 79, at ¶ 67; *Microsoft Corp.*, 357 F.3d at 1350 (relying in part on the fact that "the specification is identical for all three patents" to support construing the asserted claims consistently across the patents). Thus, all three share the same disclosure and all three specifically *do not* include any embodiments where the cables are in any other arrangement than being connected to the rotatable members / cams.

The Federal Circuit's decision in *St. Clair Intellectual Property Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270 (Fed. Cir. 2011) is instructive. There, St. Clair contended that because the asserted claims of two asserted patents used different language than the asserted claims in two other asserted patents, they should be construed differently. *St. Clair*, 412 F. App'x at 275. Rejecting St. Clair's argument, the Federal Circuit explained:

> Each patent **shares the same specification and uses similar, and often identical, terminology**. St. Clair's brief also recognizes that **the asserted claims of the other patents include "variations of [the] language"** used in claim 16. . . .

> The fact that **the specification describes only a single invention**, and **does not differentiate between the scope of claims using very different language**, suggests that the limitations in claim 1 of the '010 patent and claims 1 and 3 of the '889 patent should have the same meaning as the "different data formats for different types of computer apparatus" language in claims 16 and 17 of the '459 patent and claim 10 of the '219 patent.

*Id*. (emphasis added). The facts here align: (1) all the patents in the '375 Patent Family share the same specification and use similar, and often identical, terminology; (2) as MCP recognizes, the Asserted Claims of the other patents include "variations of the language" used in the '665 Patent claims; and (3) the common specification describes only a single invention and does not differentiate between the scope of claims using very different language.

Accordingly, construing "first cable segment" and "second cable segment" to have the same meaning as the first power cable and second power cable extending between the first and second rotatable members, as Ravin has proposed, comports with clear Federal Circuit precedent. Applying that proper construction, Ravin is entitled to summary judgment of non-infringement on the Asserted Claims of the '665 Patent for the same reasons Ravin is entitled to summary judgment of non-infringement on the Asserted Claims of the '375 and '757 Patents.

        3.     *Ravin Is Entitled To Summary Judgment Of Non-Infringement Of The Asserted Claims Of The '375 Patent Family Under The Doctrine Of Equivalents*

Ravin is likewise entitled to summary judgment of non-infringement under MCP's belated doctrine of equivalents theory. At the outset, MCP has not disputed that it failed to timely raise this theory, nor has it offered up any explanation as to why its doctrine of equivalents theory should not be waived or otherwise stricken by the Court. Accordingly, as Ravin argued in its Opening Brief, the Court should strike MCP's doctrine of equivalents based on waiver. *See* Ravin Br., at 23 n.5 (citing *ViaTech Techs. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 553 n. 5 (Fed. Cir. 2018); *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 595 F. App'x 983, 987 (Fed. Cir. 2015). Even if MCP had not waived this theory, MCP has failed to identify a genuine dispute of material fact to justify denying Ravin's motion.

As for *Akzo*, MCP misrepresents the Court's analysis. MCP Br., at 44. It was not just the failure to articulate what construction the expert was applying that the Court found "truly undermine[d]" his analysis. *Id*. (quoting *Akzo*, 811 F.3d at 1342). Instead, the Court explained that "what truly undermines Akzo's reliance on the [expert's analysis] ***is the [expert's] failure to articulate how Dow's accused process operates in substantially the same way***." *Akzo*, 811 F.3d at 1342 (emphasis added). And while the expert's failure to articulate what construction he was applying was one part of the Court's criticism, the critical flaw was the expert's failure to "articulate how the differences between the two processes [were] insubstantial." *Id*. (explaining the expert "fails to articulate which construction of 'collecting' he invokes, ***much less*** articulate how the differences between the two processes are insubstantial.") (emphasis added). Rejecting Akzo's attempt to rely on this testimony as a genuine dispute of material fact, the Court explained that "[s]uch ambiguity and generality cannot create a genuine issue of material fact." *Id*.

*Akzo* compels the same conclusion here. As in *Akzo*, "what truly undermines [MCP's] reliance on [Dr. Paulus' opinion] is [Dr. Paulus'] failure to articulate how [Ravin's] accused

[products] operate[] in substantially the same way[,]" and specifically Dr. Paulus' failure to "articulate how the differences between the two [ways] are insubstantial." *Id*. As MCP acknowledges, the full extent of Dr. Paulus' opinions regarding the "way" prong is one half of one sentence: "The R500/R500E would be performing that function in the same way ***by rotating the cams and 'taking up' the cables on the cams***." (emphasis added). *MCP Opp*., at 42. This is just as "broad and scant" as the expert's analysis of the way prong in *Akzo*: "…in substantially the same way (by collecting the dispersed material in a contained volume)[.]" *Akzo*, 811 F.3d at 1342.

Accordingly, because the sole evidence in support of its doctrine of equivalents theory is Dr. Paulus' "broad and scant" analysis, and because "[s]uch ambiguity and generality cannot create a genuine issue of material fact[,]" Ravin is entitled to summary judgment of non-infringement on MCP's doctrine of equivalents infringement theory.

> 4.     *Ravin Is Entitled To Summary Judgment Of Non-Infringement Based On The Biasing Limitations*

There is no dispute that direct infringement does not require proof of intent. *Ravin Br.*, at 47. But that was not Ravin's argument. The entire basis for Ravin's motion for summary judgment of the "biasing" limitations was MCP's own construction—"an arrangement of components ***designed to*** position a cable." MCP Br., at 45–46. Taken with the remainder of the claim language requiring the cable positioner "bias" the cable, under MCP's proposed construction the claims require "an arrangement of components designed to bias a cable[.]" Thus, MCP itself admits that to infringe, Ravin's alleged cable positioners must be ***designed to*** position a cable. *Id*. So Ravin is not arguing that it does not infringe because (1) it designed the R500's cable positioner to bias the cable, but (2) it did not know doing so would constitute infringement (which would implicate MCP's law on intent). Instead, Ravin is arguing the cable positioner is ***not designed to*** bias the cable and therefore does not infringe under MCP's own construction. Thus, Ravin was not

"ignoring the evidence" MCP relied upon showing incidental contact between the alleged cable positioner and cable as MCP contends. *MCP Opp.*, at 45–46. It simply is not relevant to **MCP's own construction** for "cable positioner" or Ravin's motion for summary judgment.

That MCP believes there is a dispute as to "the design's alleged purpose" is of no moment. *MCP Opp.*, at 47. It is MCP who bears the burden of infringement, so it is MCP who must present evidence sufficient for a reasonable juror to rule in its favor. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 5781 U.S. 191, 196 (2014) ("[T]he patentee, not the accused infringer, bears the burden of proving infringement"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011) ("[T]he plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device"). MCP has no such evidence. All MCP can do is "submit[] that the Ravin R500 crossbow operates and biases cables exactly as Ravin designed and engineered it to do." *MCP Opp.*, at 47. What evidence does MCP rest that submission on? Only attorney argument that "[t]he evidence for [infringement] is in the results[.]" *Id*. But the result alone does not create a genuine dispute as to whether the alleged cable positioner was "designed to" bias. As the Federal Circuit has repeatedly held, when a claim requires a component be "designed to" perform a specific function, that an accused device **can** perform that function is insufficient as a matter of law to read on the limitation, it must be intentionally designed to perform that function. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012); *Acuity Brands Lighting, Inc. v. Ultravision Techs., LLC*, 2021 WL 3187439 (D. Del. 2021) (construing "configured to" as "designed to" and noting that "district courts have relied on *Aspex Eyewear* to construe 'configured to' as 'programmed to,' which implies intentional design rather than mere capacity); *see also In re Man Mach. Interface Techs. LLC*, 822 F.3d 1282, 1287 (Fed. Cir. 2016) (where "adapted to/for" in the limitations "a body adapted to be held by the human hand" and "a

thumb switch . . . adapted for activation by a human thumb" was construed as "designed to/for," holding that just because the body could be held by the human hand or the thumb switch could be activated by a human thumb was insufficient to read on the limitations); *In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014).

### C. The '220 Patent

1. *Ravin is entitled to summary judgment of non-infringement on the Asserted Claims of the '220 Patent when properly construed*

a. The Asserted Claims of the '220 Patent should be limited to a "compound archery bow," which excludes crossbows

Ravin's proposal to limit the preamble of the Asserted Claims to vertical compound archery bows but exclude crossbows is consistent with the law and intrinsic evidence. First, Ravin's construction adding "vertical" is only necessary because MCP has contended that "compound archery bow" is broad enough to include crossbows—despite the preamble explicitly limiting itself to a "bow." Dkt. 6-9, at Claims 1, 11. As MCP's own evidence confirms, a crossbow is not a "bow." Dkt. 101, at ¶ 3. But because MCP has advanced an overbroad construction for "compound archery bow" that includes crossbows, it was necessary for Ravin to advance a construction that was clear and consistent with the true plain and ordinary meaning of the phrase, viewed in light of the specification. Ravin's proposed construction is therefore both proper and commonplace. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (rejecting the district court's construction of a claimed "body" that did not limit the claim to "a one-piece body" because "while the claims le[ft] open the possibility that the recited 'body' may encompass a syring body composed of more than one piece, the specifications tell us otherwise" because the specifications, in part, "only disclose embodiments that are expressly limited to having a body that is a single piece." Thus, "a construction of 'body' that limits the term to a one-piece body is required to tether the claims to what the specifications indicate the inventor actually

17

invented."). In contrast, MCP itself ignores key canons of claim construction—the preamble will be limiting when it states a necessary and defining aspect of the invention or "when the preamble is essential to understand limitations or terms in the claim body." *See On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343–44 (Fed. Cir. 2006) ("In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention[.]"); *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Here, the specification is replete with disclosure confirming the preamble states a necessary and defining aspect of the invention and is necessary to understand the limitations in the claim body. First, the '220 Patent explains that with prior art compound archery bows of the time, "[a]s the bow is drawn from a brace condition to a full draw," the rotatable members "would move in a rearward direction, away from the bow handle and towards the shooter." Dkt. 6-9, at 1:18–23. But, MCP explained, "[t]here remain[ed] a need for further improvement in archery bows, including the ability to store more energy in the drawn condition and to ***gain further control over a bow's draw force profile***[.]" *Id*. at 1:24–27 (emphasis added). Thus, one stated goal of the invention was giving the archer—who must manually draw the bowstring—more control over the bow's draw force profile as they draw the bowstring into the drawn orientation. Second, as Ravin detailed in its Opening Brief, the preamble is necessary to understand the "riser" limitations in the body of the claims.  Ravin Br., at 19–23.

Moreover, MCP is wrong that the claims do not rely on the preamble for antecedent basis. *MCP Opp*., at 17. MCP assumes the entire phrase "compound archery bow" must be present in the body in order for the preamble to provide antecedent basis to limitations in the body. *Id*. Not so. "Compound archery bow" provides antecedent basis for the recitation of "the bow" in the body of

the claim for the simple reason that "the bow" derives its meaning from the "compound archery bow" recited in the preamble. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357 (Fed. Cir. 2012) (noting that the term "rotary cutter deck" in the preamble "provide[d] antecedent basis for 'said deck' in Claim 5.").

More problematically, MCP cannot rebut that Ravin's construction is the sole construction consistent with the intrinsic evidence. And MCP's criticism of Ravin's reliance on the intrinsic evidence is fatally flawed. Rather than look to what the intrinsic evidence *as a whole* suggests as the proper scope of the claim, MCP piecemeals the intrinsic evidence to make broad and improper arguments against each piece of the intrinsic evidence. *MCP Opp.*, at 16–18. One particularly egregious example of MCP's tactic is its claim that Ravin "commit[ted] 'one of the cardinal sins of patent law'" by relying on the '220 Patent's figures. *MCP Opp.*, at 17 (quoting *Phillips*, 415 F.3d at 1320; *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347–48 (Fed. Cir. 2009)). Not so. Ravin never argued that the Asserted Claims should be limited to compound archery bows just because that is all that the figures depicted. Ravin relied on the figures as *some* of the intrinsic evidence that, like *all of the intrinsic evidence*, supports Ravin's construction. Ravin Br., at 18–21. Ravin is not looking only to the Figures to supports its construction. To the contrary, the entire '220 Patent—figures, abstract, specification, claims, file history—all support Ravin's construction.

Accordingly, because the preamble states a necessary and defining aspect of the invention and is necessary to understand the limitations in the body of the claims, consistent with the intrinsic evidence the Court should construe the claims of the '220 Patent as being limited to vertical "compound archery bows."

        b.    There is no genuine dispute the R500 lacks a cable positioner "attached to" the alleged riser

Once again, MCP completely misrepresents the intrinsic evidence in arguing the claimed "riser" should broadly include a crossbow's riser. *MCP Opp.*, at 21. First, it is immaterial that the claims, abstract, and brief summary of the invention note that the riser supports a first limb and a second limb. *Id.* That is not in dispute. Nor does it answer the question of whether the riser must be the bow's handle. But the remainder of the intrinsic evidence—which MCP recognizes is the most relevant evidence, *MCP Opp.*, at 21—answers that question in the affirmative. Each of the '220 Patent's references to the riser-related claim limitations discusses the handle, not the riser. Indeed, discussing the sole limitation MCP actually acknowledges (e.g., a riser supporting a first limb and second limb), the '220 Patent refers to the handle, not the riser. Dkt. 6-9, at 2:50–51 ("The bow **10** comprises a ***handle 14***, a first limb **16**, and a second limb **18**.") (emphasis added). Discussing the claimed "predetermined location," which the claims demand be defined by the "riser," the '220 Patent again teaches it is defined by "the handle **14**." *Id.* at 2:59–61. Discussing the claimed movement of the reference plane, which the claims demand be in a direction towards the predetermined location on the riser, the '220 Patent once again teaches that the reference plane moves towards the ***handle***, not the riser. *Id.* at 3:15–17; 3:29–47; 4:1–4. The '220 Patent's explicit and exclusive repeated teaching that the riser is the handle compels a construction that the claimed riser must, at a minimum, include a handle. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370–71 (Fed. Cir. 2016) (observing that the Federal Circuit has "recognized that when a patent 'repeatedly and consistently characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization" and finding that the apperance of the "words 'pager' and 'pager units' . . . in the specification over 200 times, and, apart from the Abstract, the specification repeatedly and exclusively uses these words to refer to the devices in the patented

system" supported the district court's claim construction). Because there is no genuine dispute as to whether the R500's riser includes a handle, Ravin is entitled to summary judgment.

But even under MCP's construction, MCP's attempt to manufacture a genuine dispute of material fact to survive Ravin's motion for summary judgment fails. MCP relies on the fact that the green component highlighted in the R500 CAD file below is connected to the riser to argue summary judgment is not warranted. *MCP Opp.*, at 63. MCP's argument fails for two reasons. First, the alleged cable positioner MCP relies on for its infringement theory is shown in red below:



*See MCP Opp.*, at 63; *compare* SPPF 76–80 *with* Dkt. 74-11, at 5, 16. Thus, whatever the component highlighted in green connects to has no relevance to MCP's infringement claim. Second, even the alleged cable positioner below the shooting axis was relevant, by MCP's own admission, it is attached to the stock, not the riser. *See* SPPF ¶ 78 (admitting that "the cable guard is shown in the non-parallel cable slot ***in the stock***.") (emphasis added). Thus, nothing in the CAD file above creates a genuine dispute of material fact and Ravin is entitled to summary judgment of non-infringement.

        c.     There is no genuine dispute the R500 does not include a reference plane that "continuously" or "initially" traverses away from the alleged predetermined location

As a separate basis to grant Ravin's motion, MCP is simply wrong that there is a genuine dispute that the R500/R500E includes the "reference plane" limitations of the Asserted Claims. *MCP Opp.*, at 64–66. It is MCP's burden to show that "'the properly construed claim[s] read[] on the accused device exactly.'" *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1298 (Fed. Cir. 2021). Thus, to defeat summary judgment, MCP must present evidence sufficient to create a ***genuine*** dispute that the R500 reads on the "reference plane" limitations. To be a genuine dispute, MCP's evidence must be "'such that a reasonable jury could return a verdict for the non-moving party.'" *Nat'l Prods., Inc. v. ProClip USA, Inc.*, No. 20-cv-439-wmc, 2022 WL 2304114, at *6 (W.D. Wisc. June 27, 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). MCP's identified evidence here cannot create such a genuine dispute.

There is no gray area or subjectivity to the Asserted Claims requirement. The alleged reference plane must continuously and/or initially move toward the predetermined location at the front of the crossbow. Dkt. 6-9, at Claims 1, 11. Thus, if the alleged reference moves rearward before moving forward, there is no infringement. And there is an absolute, correct answer to this question—either the rotatable members move rearward first, or they do not. MCP's unsupported claim that its evidence supports its position does not make it so. *Dominion Energy*, 725 F. App'x at 986 ("Just saying something is so does not make it true, especially when there is no record support and, in fact the [evidence] indicates otherwise."). And the evidence here unequivocally confirms Ravin's position—the alleged reference plane initially moves rearward, warranting non-infringement.

First, as explained in Ravin's concurrently filed motion to strike, the belated expert testimony of Dr. Paulus is wholly improper and should be stricken. *See* Dkt. 103 (Ravin Mot. To Strike). MCP bears the burden of coming forth with evidence sufficient to substantiate its infringement claim and was required to set forth ***all of its affirmative evidence*** in Dr. Paulus' opening expert report. Dkt. 28, at 4. MCP failed to do so. Its attempt to now introduce rebuttal evidence only ***after*** reviewing Ravin's rebuttal expert report ***and after seeing Ravin's motion for summary judgment on MCP's infringement claim*** is the height of gamesmanship and is wholly improper. This is why the Court's Scheduling Order sets specific deadlines. Summary judgment should not be a moving target where parties create new evidence to defeat a motion.

Second, MCP is wrong that the screenshots in Ravin's Opening Brief were taken from different angles or have otherwise been altered. *MCP Opp.*, at 65–66. As Dr. Duffner made explicitly clear, the screenshots were taken from a video of the R500 being drawn. *See, e.g.*, Dkt. 69, at ¶ 275 ("Below I have reproduced a sequence of screenshots taken from that video at different points in the drawing process[.]"). MCP's suggestion that the screenshots have been manipulated to support Ravin's argument is just wrong. While the screenshots were cropped and sized[2] in order to include them in Dr. Duffner's expert report, that is precisely why Ravin included the reference lines—regardless of the how the screenshots are cropped or the pictures are sized for a various margin, the reference lines provide an objective way to track the motion of the reference plane. Regardless, for the avoidance of any doubt, Ravin has submitted the original video from which the screenshots were taken concurrently with this brief. *See Brazen Dec.*, at Ex. A. Ravin also has submitted a declaration from the attorney who prepared the screenshots for Dr. Duffner's expert

---

[2] MCP's focus on the tape being located higher in the before draw photo than in the during draw photo is nonsensical. MCP Opp., at 66. MCP's argument is refuted by the bottom of the paper which, as a result of the sizing and cropping, is also in a different location as well. MCP Opp., at 66. But note—the ***bottom*** of the paper in both screenshots lines up with the wall's trim, demonstrating the paper's position has not change`d between the photos.

report stating, under oath, that no alterations or modifications were made to the video or the screenshots beyond the screenshotting, cropping, and sizing necessary to prepare the screenshots for reproduction in Dr. Duffner's rebuttal expert report. *Id*. at ¶¶ 4–7.

Setting the issue of the pictures aside, MCP's own evidence again supports Ravin's non-infringement position. Below are screenshots from MCP's own video produced in discovery as MCP_15870,[3] which also confirm Ravin's claim. While it is more difficult to see without the reference lines in Ravin's video, there is a white scuff mark on the top of the picatinny rail that may be used as a reference point, shown in the yellow box:



(Before draw)

---

[3] To preemptively rebuff any further suggestion of impropriety by MCP, Ravin has not cropped the screenshots and has attempted to size them the same.



(During draw)

As shown above, early in the drawing process, the reference plan has moved rearward such that most of the white scuff mark is covered. Thus, a reasonable juror viewing both parties' evidence in MCP's favor would still find there is no infringement—the reference line plane does not continuously or initially move towards the front of the bow. It moves rearward and, thus, does not meet the claim limitations. Accordingly, because MCP's expert's opinion is contradicted by the evidence it can be ignored, and Ravin is entitled to summary judgment. *Dominion Energy*, 725 F. App'x at 986.

Finally, even if the Court were to determine that the most favorable interpretation of these videos is not of the rearward movement of the R500's alleged reference plane, Ravin would still be entitled to summary judgment. The claims explicitly require the reference plane continuously or initially ***move towards the predetermined location (i.e., forward)***. Dkt. 6-9, at Claims 1, 11. Thus, MCP is required to present evidence that would permit a jury to find the reference plane moves forward, not just that it does not move rearward. If the reference plane remains in place

initially or continuously during the drawing process, that would still be insufficient to establish infringement. *Id*. Indeed, the '220 Patent contemplates an embodiment where the reference plane initially moves rearward or remains in the same location as the bow is drawn, but MCP expressly chose to claim only the embodiment where the reference plane continuously or initially moves forward. Dkt. 6-9, at 3:33–42. And neither party's video evidence, no matter how liberally interpreted, provides any evidence of such initial or continuous forward movement. Accordingly, Ravin's motion for summary judgment should be granted.

> 2.  *If the claims of the '220 Patent are construed to encompass crossbows, Ravin is entitled to summary judgment of invalidity because the '220 Patent lacks written description support for its claimed invention embodied in a crossbow*

MCP is mistaken in claiming, without any legal support, that Ravin's written description defense does not exist. It is well established under Federal Circuit precedent "that a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003) (quoting *Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002)). In accordance with that precedent, a claim will be invalid for lacking written description where the application "discloses one inventive component, and the [] Claims claim entirely different inventive components in the same field." *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018). Because MCP made no attempt to rebut Ravin's argument beyond erroneously claiming Ravin's defense does not exist, if the claims are broad enough to capture crossbows, then Ravin is entitled to summary judgment of invalidity of the '220 Patent for lacking written description for the reasons explained in its Opening Brief. *See* Ravin Br., at 62–64.

**D. The '433 Patent Family**

    *1.*    Ravin is entitled to summary judgment of non-infringement because the R500 does not include a cable positioner "arranged to bias"

Even accepting MCP's evidence of alleged bias, MCP cannot survive summary judgment of non-infringement of the arranged to bias limitations. *MCP Opp*., at 50. First, as explained above, MCP's law is inapposite because there is no dispute that direct infringement does not require proof of intent. *See supra*, Section II.B. Instead, because MCP chose to draft its claims to require a cable positioner "arranged to bias," which is appropriately construed as "'made to,' 'designed to,' or 'configured to[,]'" MCP must come forth with sufficient to show that the alleged cable positioner was intentionally designed to bias the cables. *Id*. Thus, for all the same reasons as set forth for the "biasing" limitations of the '375 Patent Family, Ravin is also entitled to summary judgment on the "arranged to bias" limitations of the '433 Patent. *Id*.

    *2.*    Ravin is entitled to summary judgment of non-infringement because the R500/R500E do not include an aperture having a surface that biases the alleged cable in a direction lateral to the shooting axis

For the same reasons the R500 does not infringe the "arranged to bias" limitations of the '433 Patent and the biasing limitations of the '375 Patent Family, the Court should also grant summary judgment of non-infringment on the surface biasing limitation of the '433 Patent. *See supra*, Sections II.B, II.D.

    *3.*    Ravin is entitled to summary judgment of non-infringement and or invalidity based on the "shortest distance" limitation of the '939 Patent

MCP relies on a claim interpretation for "shortest distance" that is incorrect as a matter of fact and law to try to survive summary judgment. First, MCP interpretation of "shortest distance" is in conflict with its use of antecedent basis and would render the subsequent limitation meaningless. According to MCP, the claimed shortest distance is not indefinite because the "shortest distance" will be whichever of the distances in the first and second draw position is

"shortest" as measured perpendicular and directly upwards from the cable positioner. *MCP Opp.,* at 54–55. But the final limitation recites "the shortest distance," relying on the prior limitation for antecedent basis. Dkt. 6-5, at Claims 1, 11. Thus, the shortest distance must already be known in order for that limitation to make sense.

Additionally, if the "shortest distance" limitation is solely defined by the subsequent limitation, as MCP contends, then the requirements of the claim have been rendered meaningless. There are two distinct limitations at issue here. First, the claims require a "cable separated from said shooting axis by a shortest distance as measured perpendicular to the shooting axis." *Id*. Second and separately, the claims then require that the crossbow have "a first draw orientation and a second draw orientation, the shortest distance being greater in the first draw orientation than in the second orientation." *Id*. But MCP's interpretation renders these limitations meaningless by ***first*** identifying the first and second draw orientation based on whichever has the shorter distance between the cable and shooting axis and then argues its post-hoc identification of the shorter of the two distances necessarily satisfies the "shortest distance" limitation.  MCP Opp., at 54–55.

As MCP readily admits, its overbroad interpretation of the claim permits MCP to subjectively identify the first and second draw positions and the shortest distance ***only after*** it reviews the Accused Product. MCP Opp., at 54 ("A POSITA can take the claimed measurement at any two points in a crossbow draw cycle and determine whether there is infringement."), 55 (explaining that the shortest distance "is measured in both draw orienations. That way one can determine which distance is greater."). Moreover still, MCP's interpretation would allow it to toggle its interpretation of the claims back and forth for different products and different competitors. MCP's position is wholly improper. *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324(Fed. Cir. 2009) ("Claims are properly construed without the objective of capturing or

excluding the accused device."). "The language through which claims are expressed is not a nose of wax to be pushed and shoved into a form that pleases and that produces a particular result a court may desire. The public generally, ***and in particular, the patentee's competitors***, are entitled to clear and specific notice of what the inventor claims as his invention." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1563 (Fed. Cir. 1995) (Plager, J., *concurring*) (emphasis added). MCP's tactic here is evident. Ravin's R500 utilizes a slot arrangement that is slanted in the ***opposite*** direction to the slot shown in the '939 Patent. *See, e.g.*, Dkt. 6-5, at Figures. As such, MCP has conducted a results-based analysis by beginning its claim construction with an eye towards the accused R500 and then working backwards. This is precisely what the Federal Circuit has prohibited. *Vita-Mix Corp.*, 581 F.3d at 1324.

Finally, MCP's "answers" to the questions posed by Ravin have no support in the language of the claims or the specification. MCP Opp., at 55–57. Indeed, not one of MCP's answers is supported by the language of the claims. *Id*. Instead, MCP's "answers" are based only on how it has re-written the claims. MCP's first answer is emblematic of its flawed approach. Ravin asked whether the claimed shortest distance is measured in the first or second draw orientation. *Id*. at 55. MCP answers that the claim states that "[it] is measured in both draw orientations. That way one can determine which distance is greater." *Id*. At the outset, MCP's answer again reflects its misunderstanding of the law—it believes it should be permitted to review the Accused Product and its various draw orientations, conduct its measurements first, and only then offer its construction for the claim. That is not what the claim recites. The claim recites that "a shortest distance" is "measured perpendicular to the shooting axis[.]" Dkt. 6-5, at Claims 1, 11. Thus, the shortest distance must be defined before moving to the next limitation, otherwise, the limitation is meaningless.

MCP should not be permitted to push and shove the language of the claims like a nose of wax to read on the R500. Nor should it be allowed to manipulate the claims so that its competitors have no ability to discern the actual scope of the claims and design products that avoid infringement. As written, the claims do not fail to inform the scope of the invention to a POSITA with reasonable certainty. *Nautilius, Inc. v. Biosig Instr., Inc.*, 134 S. Ct. 2120, 2124 (2014). Accordingly, Ravin is entitled to summary judgment of invalidity on the Asserted Claims of the '939 Patent.

### E. The '893 Patent Family

> *1.* Ravin is entitled to summary judgment of non-infringement because there is no genuine dispute that the R500's rotatable members do not overlap with the stock.

As a threshold matter, Ravin's "proposed construction" is not new, nor is it even a proposed construction. Ravin's non-infringement argument is based on the plain language of the claim. No further construction is necessary. *See* Ravin Br., at 50. And the express language of the claims compels a grant of Ravin's motion for summary judgment.

First, the recitation of "rotatable member" and "a portion of the rotatable member" in the same claim limitation "indicate[s] '[rotatable member]' alone must mean more than just a portion of the [rotatable member]." *See Cheetah*, 939 F.Supp.2d at 657–58 ("Claim 8 specifically distinguishes between 'the first part' and 'a portion of the first part' in consecutive limitations, indicating 'the first part' alone must mean more than just a portion of the first part."); *see also Personal Web*, 848 F.3d at 990–91 (explaining that the recitation of "the data . . . comprises at least some of the contents of the particular data item" in the independent claims made it impossible to interpret the claims to require "all" of the data, which was further confirmed by a dependent claim that expressly added that limitation).

Second, it is immaterial the figures do not show the entire rotatable member overlapping. As MCP argues elsewhere in its brief, to do so would be to commit "one of the cardinal sins of patent law" by limiting the claims to what is shown in the figures. MCP Opp., at 17 (quoting *Phillips*, 415 F.3d at 1320; *Kara Tech. Inc.*, 582 F.3d at 1347–48). Nor does Ravin's reliance on the express language of the claims "exclude *every* embodiment of the invention." Ravin Br., at 60. As Ravin observed, the specification of the '893 Patent, like the claims, exclusively teaches that the "rotatable member" overlaps with the stock, while only "a portion of" the rotatable member intersects with the stock. Dkt. 79, at SOF ¶¶ 114–15. Thus, the specification itself describes an invention consistent with the plain language of the claims as expressly recited and understood by Ravin. *Id*.

Finally, whether it is impossible for the entire rotatable member to overlap with the stock is not the relevant question. It very well may be, and MCP may very well wish that it had drafted different claims. But the Federal Circuit has "repeatedly and consistently recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). That is the case even when if the result is nonsensical or inoperable. *Id*. Thus, it would be improper for MCP to now attempt to rewrite the claims and this Court <u>*must*</u> apply the claims as they are written, "not as [MCP] wish[es] [it] had written" them. *Id*. Because there is no genuine dispute that the R500's rotatable members do not overlap with the stock as expressly recited in the claims, Ravin is entitled to summary judgment of non-infringement.

  2. Ravin is entitled to summary judgment of non-infringement because there is no genuine dispute that no portion of the R500's rotatable members passes through a sidewall of the stock.

The sole basis to support MCP's argument that the Court can summarily reject Ravin's motion as to the "passes through" limitation is based on the erroneous claim that Ravin's entire argument is built on genuine disputes of fact. MCP Opp., at 61–62. That is false. Regardless of whether MCP wants to call the R500's finger guard the "top cover" or any other name, that component is not "the stock" under *either party's* construction of the term. Thus, the question before the Court is purely legal. As MCP continues to admit, "[e]very crossbow has a stock, which supports an attached bow portion and to which a latch and trigger mechanism (*i.e.*, a fire control assembly) are also attached, to hold and then release a bow string under tension." MCP Opp., at 4. Thus, even under MCP's construction, the "finger guard" or "top cover" is not "the stock" because it does not support the attached bow portion and is not attached to the latch or trigger mechanism for holding and releasing the bowstring. Thus, all of MCP's alleged "genuine disputes of material facts" are immaterial because all of them show the rotatable member going above the stock and below the "finger guard" or "top cover." MCP Opp., at 61. That MCP and its expert call the "finger guard" or "top cover" the stock is immaterial where it does not even meet MCP's own proposed construction.

Accordingly, Ravin is entitled to summary judgment of non-infringement.

## F. The 'D195 Patent

1. *MCP Failed To Rebut The Intrinsic Evidence Confirming The D'195 Patent Is Limited To A Crossbow's Flight Groove Or Arrow Track, Warranting Summary Judgment Of Non-Infringement*

MCP does not dispute, nor could it, that its claimed design is limited to that design applied to a crossbow rail—the specific article of manufacture claimed. *MCP Opp.*, at 67–68; *see Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1336 (Fed. Cir. 2019); *In re SurgiSil, L.L.P.*, 14 F.4th 1380, 1382 (Fed. Cir. 2021) (reiterating that design patent claims are "limited to the particular article of manufacture identified in the claim[.]"). And contrary to MCP's

unsupported argument, Ravin's definition of "crossbow rail" is not "self-serving," but appropriately derived directly from the intrinsic evidence—intrinsic evidence that MCP made no attempt to rebut. *MCP Opp.*, at 67–68. Instead, MCP's entire argument rests on references to the R500's "rails" in Ravin's discovery responses. *Id*. MCP's argument is immaterial. First, Ravin was responding to MCP's infringement allegations, which generically identified the R500's "triangle shaped rail" as the infringing structure. Dkt. 6, at 6. And more importantly, whether the picatinny rail and finger guard are described as rails or not has no bearing on the scope of the claimed design of the D'195 Patent—the scope is dictated by the intrinsic evidence. And that intrinsic evidence conclusively confirms the D'195 Patent is limited to a design applied to a crossbow's flight groove or arrow track. Specifically, the dashed lines in the figure and MCP's representations during prosecution. *See, e.g., Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (observing that "the role of broken lines" and "representations that may have been made in the course of the prosecution history" are "issues that bear on the scope of the claim."); *Curver*, 938 F.3d at 1341 (explaining the prosecution history of a design patent may limit the scope of the claim).

First, the figure of the D'195 Patent supports Ravin's contention that the "crossbow rail" is specifically the "flight groove or arrow track":



Dkt. 6-10. While the dashed lines in the figure depict "[s]tructure that is not part of the claimed design," those lines "show the environment in which the design is associated . . . includ[ing] any

portion of **an article** in which the design is embodied or applied to[.]" MPEP § 1503.02(III); *see also Campbell Soup Company v. Gamon Plus, Inc.*, 10 F.4th 1268, 1271 (Fed. Cir. 2021) (explaining that broken lines in a design patent figure "'represent the article in which the claimed design is embodied[.]"). Critically, the notch shown in dashed lines in the upper right corner of the figure supports Ravin's contention that the "article" is the "flight groove or arrow track" of a crossbow. This is confirmed by the prosecution history.

During prosecution, MCP was forced to file a terminal disclaimer to overcome a non-statutory double patenting rejection because the D'195 Patent claimed a design that was not "patentably distinct from" the claimed design of MCP's D'194. Dkt. 79, at SOF ¶¶ 162–64. The figure of the D'194 Patent confirms that the notch in the upper right corner of the D'195 Figure is a feature of the "flight groove or arrow track":



*Id.*

Then, to overcome an anticipation rejection based on the Mission SUB-1 Crossbow,[4] MCP submitted a declaration from Stephen McPherson, the President of Mathews Archery, confirming that the SUB-1 "embodies the claimed Crossbow Rail design[.]" *Brazen Dec.*, at Ex. B, at MCP_002161–MCP_002163, MCP_002175. The SUB-1 crossbow, like the D'194 and D'195 Patents, confirms the "crossbow rail" is specifically the "flight groove or arrow track." Again, note that the SUB-1's flight groove includes the exact notch shown in the design patents:



Dkt. 79, at ¶ 165 (annotated).

Taken together, and unrebutted by MCP, the intrinsic evidence conclusively establishes that the claimed "Crossbow Rail" design of the D'195 Patent is the design specifically for a crossbow's flight groove or arrow track. Because there is no genuine dispute that the R500's flight track does not utilize the claimed design, Ravin is entitled to summary judgment of non-infringement of the D'195 Patent. *See Curver*, 938 F.3d at 1343 (holding that "no 'ordinary observer' could be deceived" into purchasing the accused basket because the claimed design was to a different article of manufacture).

---

[4] Beyond the SUB-1's relevance to the prosecution history, the SUB-1's design is the patented design. Therefore, it is appropriate "to compare the patentee's and the accused articles directly[.]" *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125–26 (Fed. Cir. 1993). Because the R500 does not have the claimed design on its flight groove or arrow track like the SUB-1, this is further evidence that the R500 does not infringe.

> 2. *MCP's Observably False Claim That Ravin's Picatinny Rail And Finger Guard Both Contain Triangles Of Uniform Size And Shape Is Insufficient To Defeat Ravin's Motion For Summary Judgment*

MCP cannot defeat Ravin's motion by misapplying the law and advancing plainly false facts. First, MCP's misapplies this Court's guidance in *Durdin*. *Durdin v. Kuryakyn Holdings, Inc.*, 449 F.Supp.2d 921 (W.D. Wisc. 2006). There is of course no dispute that the infringement analysis is performed "through the eyes of an ordinary observer, not a lawyer who inspects the designs critically to highlight each and every perceivable difference between [the designs]." *Durdin*, 449 F.Supp.2d at 933–34. But the "differences" Ravin relies upon in support of its motion were ***not*** produced by a lawyer. Ravin's expert provided 10 pages of opinion regarding the scope of the D'195 Patent, the prior art, and the differences between the claimed and accused designs. *Ravin Br.*, at 74–75. Ironically, the guidance from *Durdin* actually undercuts MCP's argument. In stark contrast to Ravin's supporting expert testimony, MCP's expert advanced nothing but conclusory opinions based on observably false factual statements. *See id.* at 75–76. Thus, it is MCP whose analysis is based on observations from "a lawyer who inspects the designs critically to highlight" the alleged similarities between the claimed and accused designs. *Durdin*, 449 F.Supp.2d at 933–34.

MCP's analysis of *Super-Sparkly* can likewise be summarily set aside. Beyond summarizing the facts of *Super-Sparkly*, MCP provides no ***actual*** legal analysis to support its claim that the facts before the Court are not equivalent to those in *Super-Sparkly*. *MCP Opp.*, at 71. MCP simply states its conclusion without support or analysis, repeats its erroneous characterization of Ravin's extensive supporting expert opinions as lawyer inspection (again, without any supporting analysis), and claims victory. *Id*. But unsupported attorney argument is not sufficient to defeat a motion for summary judgment. *See Tecumseh Prods. Co. v. Briggs & Stratton Corp.*, 295

36

F.Supp.2d 902, 916 n.2 (E.D. Wisc. 2003) (granting defendant's motion for summary judgment of no design patent infringement and finding that an attorney declaration "relied upon by Tecumseh to show that there is a genuine issue of material fact which precludes summary judgment on the issue of infringement" was "insufficient to support a jury verdict in favor of Tecumseh[.]"). Ravin, by comparison, provided the Court with a detailed analysis supporting its position that *Super-Sparkly* should be taken as instructive. *Ravin Br.*, at 68–74.

Even if the Court were to decide the designs were not plainly dissimilar, MCP's attempt to sidestep the prior art likewise fails because it is completely untethered to the evidence of record. Once again, MCP begins by attempting to reduce Ravin's detailed analysis and supporting expert opinions on the key differences between the prior art and claimed design. *MCP Opp.* at 72. MCP itself provides ***no analysis*** whatsoever on what the key differences between the prior art and claimed design are. *Id*. And even absent Ravin's analysis and supporting opinions, the differences between the prior art and claimed design are readily observable from even a cursory review of the prior art. *See Ravin Br.*, at 71–74. MCP then misleadingly recharacterizes Ravin's opening brief. *MCP Opp.*, at 72. Ravin did not argue the distinguishing feature of the claimed design was " its specific linear arrangement of uniform triangle cutouts." *Id*. Ravin expressly argued the distinguishing feature "is its specific linear arrangement of uniform cutouts, each having that unique shape, extending through a flat, solid component." *Ravin Br.*, at 74. Properly defined, the lack of the distinguishing feature of the claimed design in the R500, like in *Super-Sparkly*, entitles Ravin to summary judgment of non-infringement. *Id*. at 74–76.

Regardless, MCP's attempt to create a strawman to attack is of no moment—the prior art supports Ravin's legal conclusion even under MCP's erroneous characterization of the claimed design's distinguishing feature. The sole basis for MCP's argument is that the R500 "also

contain[s] a specific linear arrangement of uniform triangle cutouts[.]" *MCP Opp.*, at 72; *see also id.*, at 73 (claiming the R500's designs "all contain triangles of uniform size and shape."). That is just not true. Not surprisingly, MCP elected not to include a side-by-side comparison of the claimed and accused designs in its brief. *Id.* at 72–73. Doing so would mean undermining its own false claims. *See Ravin Br.*, at 69–70. But Ravin ***did*** provide such a comparison, and that comparison unmistakably confirms that Ravin's accused designs do not include "a specific linear arrangement of ***uniform triangle*** cutouts." *Id.* at 69–71. MCP cannot survive summary judgment based only on how it wishes Ravin would have designed the R500. *See generally, Egyptian Goddess*, 543 F.3d 665, 682–83 (Fed. Cir. 2008) (affirming summary judgment of non-infringement based in part on the Court's finding that the plaintiff's expert failed to "acknowledg[e] that the patented design has three pads while the accused design has four[.]").

MCP ends its argument with one final incorrect statement. *MCP Opp.*, at 72–73. Addressing just one of the seven prior art references Ravin analyzed in its opening brief, MCP takes issue with an alleged "misleading photo" of Ravin's own TacHeads Bi-Pod product. *Id.* at 72. MCP again provides no explanation as to why Ravin's photo was misleading, nor could it. *Id.* The claimed design is limited to a sequence of four cutouts. Dkt. 101, at SPFF ¶¶ 91–92. Thus, the analysis focuses on the prior art four cutout designs. But again, MCP's own comparison still compels summary judgment. At the outset, MCP again elected not to provide the Court with a side-by-side comparison to support its claim that the design of the TacHeads Bi-Pod differs from the accused picatinny rail design. *Id.* at 73. And again, had it done so, that comparison would have refuted MCP's false claim. Indeed, Ravin once again already provided the side-by-side comparison doing just that. *Ravin Br.*, at 74.

Because MCP's claimed "genuine dispute of material fact" is based solely on observable falsehoods, Ravin is separately entitled to summary judgment of non-infringement of the D'195 Patent under the ordinary observer test.

## III.  CONCLUSION

For all these reasons, Ravin respectfully requests the Court grant its motion for summary judgment.

Dated: June 1, 2023                                    Respectfully submitted,

*/s/ Adam P. Seitz*
Adam P. Seitz (pro hac vice)
KS Bar No. 21059
Email: adam.seitz@eriseip.com
Michelle L. Marriott
KS Bar No. 21784
Email: michelle.marriott@eriseip.com
Alex M. Matthews (pro hac vice)
KS Bar No. 29028
Email: alex.matthews@eriseip.com
Clifford T. Brazen (pro hac vice)
KS Bar No. 27408
Email: cliff.brazen@eriseip.com
**ERISE IP, P.A.**
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Telephone: 913-777-5600; Fax 913-777-5601

J. Derek Vandenburgh
WI Bar No. 0224145
Email: dvandeburgh@carlsoncaspers.com
**Carlson, Caspers, Vendenburgh &**
**Lindquist, PA**
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9618

Sarah A. Zylstra
State Bar No. 1033159
Email: szylstra@boardmanclark.com
**BOARDMAN & CLARK LLP**
1 South Pinckney Street, Suite 410
P.O. Box 927
Madison, WI 53701
Telephone: (608) 257-9521
Facsimile: (608) 283-1709

*Attorneys for Defendant RAVIN CROSSWBOWS, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2023, a true and correct copy of the above and foregoing document has been filed via ECF which will send notice to all counsel of record.

*/s/ Adam P. Seitz*
Adam P. Seitz