IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MCP IP, LLC,

                            Plaintiff,

   v.

RAVIN CROSSBOWS, LLC,

                            Defendant.

OPINION and ORDER

22-cv-4-jdp

Plaintiff MCP IP, LLC filed suit against defendant Ravin Crossbows, LLC for alleged infringement of multiple crossbow and crossbow accessory patents. Dkt. 6 at 1. Prior to or concurrent with this case, plaintiff succeeded on patent infringement claims against other crossbow and bow manufactures, at least one of which resulted in a licensing agreement to patents related to those asserted here. Now before the court are defendant's two motions to compel production. Dkt. 168 & Dkt. 193. The former seeks the licensing agreement reached in plaintiff's suit against Bowtech, Inc. and a video showing testing of a prototype bow. The latter seeks material discussed and relied upon in proving damages in plaintiff's suit against .30-06 Outdoors, LLC. Both of these motions were filed after the close of discovery, months after defendant had reason to compel production of the licensing and damages materials. Defendant has failed to explain this delay, and the court finds no good cause to excuse it. The court also finds that the request for the testing video is speculative and that the burdens associated with its production outweigh any probative value. Accordingly, both motions are DENIED.

BACKGROUND

In 2017, years before this suit was filed, plaintiff sued Bowtech, Inc. for infringement of multiple patents. *MCP IP, LLC v. Bowtech, Inc.*, No. 6:17-cv-1896-MK (D. Or. Nov. 27, 2017), Dkt. 1. That suit resolved by a stipulated settlement, which included a licensing agreement for all of the patents asserted there, along with their related patents. Dkt. 170-4 at 2–5. Specific to the patents asserted here, the agreement expressly licensed three patents related to the '220 patent and licensed the '220 patent itself as a "related patent." *See id.* at 5 & 31; *see also* Dkt. 6-9. While the settlement was recorded on the public docket, the licensing agreement was not. *See MCP IP, LLC v. Bowtech, Inc.*, No. 6:17-cv-1896-MK (D. Or. Feb 26, 2020), Dkt. 164.

In February 2021, plaintiff filed suit against .30-06 Outdoors. *MCP IP, LLC v. .30-06 Outdoors et al.*, No. 2:21-cv-581-CMV (S.D. Ohio Feb. 9, 2021), Dkt. 1. Default judgement was entered against .30-06 in August 2022, *id.* at Dkt. 42, a damages hearing took place in February 2023, *id.* at Dkt. 57, and judgment was entered in March 2023, *id.* at Dkt. 63.

In January 2022, plaintiff filed this suit, *Raven I,* Dkt. 1, claiming defendant infringed plaintiff's '375, '757, '665, '433, '939, '435, '893, '056, '195, and '220 patents. Dkt. 25 at 3. In April 2022, defendant served its first set of requests for production, which sought all of plaintiff's licenses and settlements, including specifically those involving Bowtech. Dkt. 42-05 at 7–8. In response, plaintiff informed defendant that documents related to the Bowtech settlement were subject to confidentiality obligations and informed defendant that it would withhold the documents based on that objection. Dkt. 170-2 at 14–15. After meeting and conferring, plaintiff stated via email that "there is nothing relevant related to [the Bowtech]

2

lawsuit." Dkt. 170-1 at 3. The Bowtech license agreement remained unproduced in *Ravin I* when discovery closed in August 2023. Dkt. 174 at 3.

Also in *Ravin I*, in July 2024, nearly a year after the close of discovery, defendant informed plaintiff that it had learned of several other unproduced licensing agreements after reviewing the docket in plaintiff's case against .30-06. Dkt. 202-1 at 7–8. Specifically, defendant pointed to the expert declaration and representations on which plaintiff relied during the February 2023 damages hearing, which detailed plaintiff's licenses and licensing practices. *Id.* Plaintiff responded that the documents were not responsive to defendant's first set of requests, which sought "documents relating to industry licensing practices, documents relating to any royalty rates for technology relating to the subject matter disclosed or claimed by the Patents-in-Suit, and documents supporting and relating to [plaintiff's] claim for damages." Dkts. 42-5, 202-1 at 1.

Concurrently, in March 2023, plaintiff filed its second suit against defendant, *Ravin II*. In *Ravin II*, the court entered a stipulated protective order that prohibited the parties from using any discovery produced in *Ravin II* in *Ravin I* if it was produced after *Ravin I*'s August 2023 close of discovery. Dkt. 170-5. In July 2023, defendant served a set of document requests seeking plaintiff's licensing agreements, and, in response, plaintiff produced the Bowtech agreement in September 2023. Dkt. 170-4. Thus, the Bowtech agreement was produced in *Ravin II* one month after the close of discovery in *Ravin I*. Additionally, in response to requests related to reduction to practice, plaintiff produced a video depicting testing of a protype bow. Dkt. 174 at 11.

Three months later, in December 2023, defendant moved to compel the production of the Bowtech agreement and the testing video in *Ravin I*. Dkt. 168. Six months after that, in

3

July 2024, defendant moved to compel the production of the damages materials discussed in the .30-06 case. Dkt. 193.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The court expects parties to diligently pursue discovery and use the tools at their disposal to follow discovery leads. Dkt. 28 at 1. "Because the parties will not receive extensions of other deadlines [absent good cause], they must file discovery motions promptly if self-help fails." *Id.*, ¶ 8. Promptly means as soon as a party has knowledge, or should have knowledge, that documents the party believes should be produced are being withheld and the parties have satisfied their Rule 37 obligations.

Lack of diligence, when combined with an unexplained delay that risks compromising the case schedule, is reason enough to deny an untimely motion. *Fiskars Finland Oy Ab v. Woodland Tools Inc.*, No. 22-CV-540-JDP, 2024 WL 2504717, at *2 (W.D. Wis. May 24, 2024); *see also Balschmiter v. TD Auto Finance LLC*, 2015 WL 2451853 at *10 (E.D. Wis. May 21, 2015) (denying motion to compel after close of discovery where "it is clear that the plaintiff

4

knew about the need for this information—likely since the beginning of the case—yet failed to act to enforce that need").

ANALYSIS

Defendant seeks three categories of documents: (1) the Bowtech license agreement, (2) the video depicting testing of a prototype bow, and (3) the expert materials plaintiff relied on to prove damages during the .30-06 damages hearing. Defendant argues these three categories are relevant to prove reasonable royalty rates for the patents asserted in this case and, with respect to the video, might either assist an expert in understanding the claim limitations in the '220 patent or cast doubt on the claimed priority date of the '220 patent. Plaintiff raises objections to the timeliness of defendant's motions, contends that compliance with the requests is barred by the protective order entered in *Ravin II*, and argues that the documents are irrelevant. The court largely agrees with plaintiff on these points.

**A. The Bowtech Licensing Agreement**

The court agrees with defendant on the threshold question of relevance. The Bowtech agreement licenses at least one of the patents asserted in this case, namely, the '220 patent because it is a related patent to those expressly licensed in the agreement. So, this agreement could arguably inform a reasonable royalty rate imposed in this case. *See Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed Cir. 2015).

The problem is that defendant did not move to compel production of this agreement until after the close of discovery—months after defendant should have known about the existence of the agreement. Defendant protests that it timely served requests for production seeking the agreement and reasonably relied on plaintiff's representation that "there is nothing

5

relevant related to [the Bowtech] lawsuit." Dkt. 169 at 4. But this objection is not an express denial of the existence of any agreement, and defendant should not have taken it as such. Moreover, the record shows that defendant should have known that the Bowtech litigation resulted in some form of settlement agreement, and there was enough information uncovered in this case indicating that this agreement very likely included a license to plaintiff's patents.

In particular, the public docket from the Bowtech litigation announced that the parties had reached a settlement agreement, Dkt. 177-3, the marketing page of Bowtech's public website confirmed that its bows were licensed under plaintiff's patents, Dkt. 177-7, and a deposition of plaintiff's engineer taken in January 2023 referenced royalties paid to plaintiff by Bowtech, Dkt. 177-8 at 19:10-12. These data points are more than enough to reasonably conclude that the Bowtech litigation resulted in a licensing agreement. And these data points were all available to defendant no later than January 2023—over six months before the close of discovery, and over ten months before defendant finally filed its motion to compel. On this record, the court cannot find defendant acted with reasonable diligence and, thus, cannot find good cause to excuse its delay.

Discovery is a balance of considerations. Fed. R. Civ. P. 26(b)(1) & (b)(2)(C). At some point, discovery must come to a close to allow the case to move forward in a controlled fashion. *W. Bend Mut. Ins. Co. v. Komo Mach., Inc.*, No. 11-CV-204-WMC, 2012 WL 12996095, at *2 (W.D. Wis. May 8, 2012). This sometimes means that relevant information is omitted from the record. But relevance may be outweighed by other considerations, like the burdens associated with having to re-do work that is already completed in advance of important case milestones. *Fiskars*, 2024 WL 2504717, at *2. That is certainly the case here, where defendant is asking for production of an agreement that would, in defendant's estimation, require re-

6

opening expert disclosures. So, even if defendant had acted diligently, the balance of considerations still weighs in favor of denying defendant's request. *See id.*

## B. The Video

Defendant moves to compel production of a video, produced in *Ravin II*, which defendant asserts depicts the testing of a prototype bow. Dkt. 169 at 10. Defendant argues that the video is relevant either to inform an expert of the inventor's understanding of the "materially similar" claims made in the '220 patent or, alternatively, cast doubt on the claimed priority date of the '220 patent. *Id.* at 11–12. Plaintiff responds that, in addition to the motion being untimely and prohibited by the protective order entered in *Ravin II*, the depicted technology is unrelated to the '220 patent's claims and the '220 patent priority date is not at issue. Dkt. 174 at 12.

Defendant's relevance arguments are tenuous. Defendant speculates about what the video might depict and then offers alternative theories of relevance based on those assumptions. Dkt. 169 at 11–12 ("*If* the video does, in fact, relate to the testing of the invention claimed in Claim 2 of the '526 Patent . . . Alternatively, *if* the video truly is only relevant to the invention described in the '526 patent . . ." (emphasis added)). These hypotheticals fail to persuade the court that the video is relevant to any of the issues in this case or that any minimal probative value outweighs the inevitable issues that would flow from its production at this juncture in the case.

## C. Damages Hearing Materials

Defendant moves to compel materials that plaintiff's expert relied upon to prove damages in the .30-06 case. Defendant argues the materials are responsive to its request no. 37, which seeks "All documents relating to industry licensing practices or royalty rates relating

7

to the subject matter disclosed or claimed by any Patent-in-Suit." Dkt. 42-05 at 37. It is not entirely clear to the court that materials from the .30-06 case fall within the scope of this request. Had defendant wanted to obtain these specific materials, it could have, and perhaps should have, made specific reference to the .30-06 case like it did when requesting the Bowtech materials.

Regardless, more problematic to defendant's request is that its motion is untimely. Parties must be vigilant and seek the court's help promptly when they need it. The damages hearing in the .30-06 case took place in February 2023, and judgment was entered in March 2023—five months before the close of discovery in this case. But defendants did not propound discovery requests specific to these materials in those many months; nor did it file the present motion until July 2024. The court sees no good reason to excuse this delay. And, as discussed above, allowing the requested discovery this late in the case will upset the orderly management of the case moving forward. *See Fiskars*, 2024 WL 2504717, at *2.

## ORDER

IT IS ORDERED that:

1. Defendant's motions to compel, Dkt. 168 & Dkt. 193, are DENIED.
2. The parties bear their own costs associated with these motions.

Entered March 28, 2025.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        ANITA MARIE BOOR
                                        Magistrate Judge